# Illinois Official Reports

## Appellate Court

---

### *People v. Fathauer*, 2019 IL App (4th) 180241

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LYNN A. FATHAUER, Defendant-Appellant. |
| District & No. | Fourth District<br>No. 4-18-0241 |
| Filed | November 15, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 10-CF-340; the Hon. Rudolph M. Braud, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, John M. McCarthy, and Ryan R. Wilson, of State Appellate Defender's Office, of Springfield, for appellant.<br><br>John C. Milhiser, State's Attorney, of Springfield (Patrick Delfino, David J. Robinson, and Thomas R. Dodegge, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion.<br>Presiding Justice Holder White and Justice Knecht concurred in the judgment and opinion. |

**OPINION**

¶ 1      In January 2012, a jury convicted defendant, Lynn A. Fathauer, of participation in methamphetamine manufacturing (720 ILCS 646/15(a)(2)(A) (West 2010)) and obstruction of justice (720 ILCS 5/31-4(a) (West 2010)). The trial court sentenced defendant to 20 years in prison for the methamphetamine offense and a concurrent term of 3 years in prison for obstruction. On direct appeal, this court affirmed defendant's conviction and sentence. *People v. Fathauer*, 2013 IL App (4th) 120424-U, ¶ 2.

¶ 2      In February 2014, defendant *pro se* filed a petition for postconviction relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)). Defendant alleged four grounds for relief, including ineffective assistance of trial counsel. In April 2014, the trial court appointed counsel to represent defendant on his postconviction petition, and later that month the State filed a motion to dismiss.

¶ 3      In August 2015, postconviction counsel filed a motion to withdraw. Citing *People v. Kuehner*, 2015 IL 117695, 32 N.E.3d 655, postconviction counsel argued each of defendant's *pro se* claims was in fact frivolous or patently without merit. In May 2016, the trial court granted counsel's motion to withdraw over defendant's objection but did not address the State's motion to dismiss.

¶ 4      Defendant appealed, and this court dismissed the appeal for want of a final order. *People v. Fathauer*, 2017 IL App (4th) 160364-U, ¶ 2. On remand, the trial court granted the State's motion to dismiss defendant's postconviction petition.

¶ 5      Defendant appeals, arguing the trial court erred by granting postconviction counsel's motion to withdraw because (1) defendant's petition stated a claim for ineffective assistance of counsel and (2) postconviction counsel rendered ineffective assistance by failing to amend the *pro se* petition. We disagree and affirm.

## I. BACKGROUND
### A. Procedural History

¶ 8      In June 2010, the State charged defendant with participation in methamphetamine manufacturing (720 ILCS 646/15(a)(2)(A) (West 2010)) and obstruction of justice (720 ILCS 5/31-4(a) (West 2010)). The State alleged defendant knowingly participated in the manufacture of less than 15 grams of methamphetamine or a substance containing methamphetamine on May 22, 2010. Regarding the obstruction charge, the State alleged defendant knowingly concealed evidence by throwing a glass jar containing methamphetamine into a grassy area.

¶ 9      In January 2012, the case proceeded to a jury trial. We need not provide a detailed summary of the testimony at trial. Such a summary may be found in the direct appeal of defendant's conviction. See *Fathauer*, 2013 IL App (4th) 120424-U. The resolution of defendant's appeal largely turns on the testimony of one witness, Daron Trudeau.

### 1. *The Jury Trial*

¶ 11      The State's first witness was Jeffrey Leininger, a Springfield police officer. Leininger was on duty around noon on May 22, 2010. Because a detective wanted to speak to Trudeau "with reference to him parting out stolen parts on a stolen car," Leininger drove to Maaco (an auto collision repair shop) to search for Trudeau and a Chevy Blazer. When he saw the Blazer,

Leininger pulled his squad car next to it and asked the driver if they could talk. The driver responded, "Why?" and drove away. The driver continued even after Leininger exited his squad car and told him to stop. Leininger followed the Blazer and initiated a traffic stop, informing the driver, Trudeau, that he was under arrest "for basically obstruction, resisting, for not listening to [his] commands, and driving away." Defendant was in the passenger seat. At some point Leininger observed white spots on defendant's clothing. He asked Trudeau and defendant if they had thrown anything from the window. Both denied having done so.

¶ 12 Trudeau testified he and defendant had known each other for five to seven years. On May 21, 2010, Trudeau took some methamphetamine he had cooked the day before to defendant's Decatur home. The methamphetamine needed further processing. To process the methamphetamine, Trudeau used a "generator" (a glass jar with a hose connected to it) and muriatic acid. Trudeau would mix aluminum with the muriatic acid to make smoke. Methamphetamine would form at the bottom of the jar. At that point, the methamphetamine would be wet. Trudeau would strain the product through coffee filters and let it dry. At defendant's house, Trudeau asked for filters and used them. Once he had the final product, Trudeau waited for it to dry and then took it with him.

¶ 13 Trudeau testified he and defendant left defendant's home in Trudeau's Chevy Blazer. While in the Blazer, Trudeau cooked more methamphetamine. Defendant assisted by acting as a lookout and by steadying the generator. The two smoked some of the methamphetamine. They also went to Trudeau's sister's house and then to Springfield. Defendant was with Trudeau when Trudeau bought lighter fluid. Trudeau obtained the anhydrous ammonia earlier by stealing it from tanks.

¶ 14 According to Trudeau, he drove to Maaco to pick up his last check from work. As he exited the Maaco parking lot, a police officer told Trudeau he wanted to talk. Trudeau responded he had nothing to say and drove away. Trudeau testified he did not stop because he had methamphetamine in his car. Trudeau handed defendant a mason jar, which contained methamphetamine, and told defendant to throw it out. Defendant threw the jar and its contents out of the passenger window. Trudeau stated a bag containing methamphetamine and a pipe were also thrown from the window. Trudeau believed he disposed of those items. Trudeau then stopped for the police. An officer removed Trudeau from the Blazer and handcuffed him. Trudeau was arrested on May 22, 2010, for unlawful participation in methamphetamine manufacturing.

¶ 15 Trudeau further testified he was interviewed by the police and the state's attorney's office. He testified he was not promised anything for his testimony and that he was facing the same charges as defendant.

¶ 16 On cross-examination, Trudeau testified his trial for methamphetamine manufacturing was approaching. Trudeau believed he would get probation for that offense because he had not been in trouble before. Trudeau agreed he had not been caught stealing anhydrous ammonia. He denied stealing anything else, including car parts. Trudeau testified he did not know he was purchasing stolen parts. He bought them because they fit his vehicle. Trudeau was not arrested for possessing stolen car parts.

¶ 17 Trudeau acknowledged giving three interviews with police and the state's attorney's office. Trudeau did not think he had told police in his first interview that he knew the parts recovered were stolen. Trudeau admitted he used half a gram to a gram of methamphetamine per day and denied telling the police officers he used two to three grams per day. Trudeau stated he had

been making methamphetamine for four to five months and admitted he sold methamphetamine when he wanted money. All of the items in the truck were thrown out of the passenger side window. He admitted that each time he manufactured methamphetamine he had to steal anhydrous ammonia. Trudeau also recruited people to purchase pseudoephedrine pills.

¶ 18    The jury found defendant guilty of both charged offenses. The trial court sentenced defendant to concurrent prison terms of 20 years for methamphetamine manufacturing and 3 years for obstruction.

¶ 19                                  2. *The Direct Appeal*

¶ 20    On direct appeal, this court summarized defendant's arguments as follows:

> "Defendant argues the State failed to prove him guilty of both offenses beyond a reasonable doubt. Defendant contends only one witness testified defendant participated in methamphetamine production and threw the jar from the Blazer. That witness, Trudeau, was 'an admitted liar, methamphetamine addict, and drug dealer,' who had a motive to testify falsely. Defendant maintains, because of this, Trudeau's testimony was unbelievable and his convictions should be overturned." *Fathauer*, 2013 IL App (4th) 120424-U, ¶ 32.

¶ 21    This court affirmed the conviction and sentence. *Id.* ¶ 2. In doing so, we noted as follows:

> "The jury was informed of Trudeau's conduct and pending methamphetamine-related charges, as well as Trudeau's alleged purchase of stolen auto parts. Defense counsel cross-examined Trudeau regarding his motive to lie and of his anticipation of receiving probation for the offense. The jury, who heard Trudeau and the other witnesses testify, apparently believed Trudeau, in spite of his alleged motive to lie and his methamphetamine addiction. This determination lies within the role of the jury. [Citation.] The record does not establish this decision was unreasonable or unreliable." *Id.* ¶ 38.

¶ 22                              B. The Postconviction Petition

¶ 23    At some point following defendant's conviction and sentence, the judge assigned to defendant's case retired, and a new judge was assigned for all further proceedings.

¶ 24    In February 2014, defendant *pro se* filed a postconviction petition in which he alleged he was denied (1) a fair trial, (2) due process, (3) effective assistance of trial counsel, and (4) effective assistance of appellate counsel. In his first claim, defendant argued he was convicted by Trudeau's allegedly false testimony. Defendant cited inconsistencies between the statements Trudeau made while talking to the police and his testimony at trial.

¶ 25    Defendant attached to his petition selected transcripts of Trudeau's trial testimony and transcripts from the May 22, 2010, interviews by Shane Overby, a detective with the Springfield Police Department. During his first interview, Trudeau told Overby he left items at Maaco when he was fired. These items included parts taken from a Chevy S10. Trudeau stated he saw the parts and purchased them because he could get rid of them or "use them on some other things." When asked why he would risk purchasing stolen property, Trudeau responded he "didn't think it that big a deal." When Overby asked if any parts were purchased and put on his car or truck, Trudeau said no. Trudeau stated he did not manufacture

methamphetamine for sale, only for his own use. The following questioning occurred regarding the amount consumed around the time of the arrest:

> "[Detective Overby (DO)]: *** When's the last time you cooked I should say that? Cause you smoked this morning so—
>
> [Daron Trudeau (DT)]: Probably 150 pills I think.
>
> DO: Okay[,] and about how much is that?
>
> DT: Probably[—]three grams probably.
>
> DO: Okay, alright, anybody else doing it with you?
>
> DT: Nope[,] just myself.
>
> DO: Okay—Nick [(defendant)] obviously[.]
>
> DT: Nick[,] yea[h]."

¶ 26 Trudeau told Overby he had been cooking methamphetamine for "[m]aybe a month or two." Trudeau reported defendant threw the "pipe and bag" from the Blazer. Trudeau did not know a jar had been thrown out. Trudeau denied throwing anything from the vehicle but then stated he threw out a pipe. Defendant also attached specific pages of Trudeau's trial testimony.

¶ 27 Regarding ineffective assistance of trial counsel, defendant argued that counsel failed to scientifically test spots on his clothing. (At trial, the State presented evidence that defendant had spots on his shirt and pants and the spot on the pants tested positive for methamphetamine.) Defendant further asserted that "[t]rial counsel's lack of pretrial investigation deprived [him] of a potential defense. [Citation.] In the case at bar, had trial counsel properly prepared for trial by investigating [Trudeau's] initial interview given [on] May 22, 2010, and had the interview been presented at trial, [defendant] would not have been convicted through false testimony by the State."

¶ 28 Defendant's other claims are not at issue in this appeal.

¶ 29 In April 2014, the trial court advanced defendant's petition to the second stage of postconviction proceedings by appointing counsel to represent defendant. Later that month, the State filed a motion to dismiss, arguing that defendant's claims were (1) barred by *res judicata*, (2) insufficiently pleaded, and (3) unsupported by the record.

¶ 30 C. The Motion to Withdraw

¶ 31 In August 2015, defendant's appointed counsel filed a motion to withdraw as counsel. In his motion, counsel cited *Kuehner*, 2015 IL 117695, ¶ 21, and explained that counsel appointed at the second stage of postconviction proceedings must "set forth some explanation as to why the petition is in fact without merit" and must do so for each of defendant's *pro se* claims before a trial court can permit counsel to withdraw.

¶ 32 In his motion, postconviction counsel listed each of defendant's claims and explained why they were in fact meritless. Postconviction counsel further addressed defendant's assertion that he was denied the effective assistance of trial counsel when trial counsel failed to conduct a pretrial investigation of Trudeau's interview, as follows:

> "Petitioner also asserts that trial counsel's lack of pretrial investigation deprived him of a potential defense. Specifically, Petitioner argues that if trial counsel had investigated the initial interview Trudeau gave on May 22, 2010, and presented this interview at trial, then Petitioner would not have been convicted by false testimony.

There is no evidence that appears from the record to support the conclusion that Trudeau gave false testimony at trial. Trial counsel had the opportunity to cross[-]examine Trudeau about the interviews he gave and the veracity of the statements he made to the police during his interviews on May 22, 2010. In fact, trial counsel did cross[-]examine Trudeau on these matters. [Record citation.] Therefore, Petitioner has not demonstrated a deficient performance by trial counsel that caused him prejudice."

Postconviction counsel also noted that "[t]rial counsel effectively cross[-]examined five of the State's nine witnesses." Regarding defendant's claim that he was convicted by false testimony, postconviction counsel explained that the issue was argued and rejected on direct appeal and was therefore barred by *res judicata*. Counsel attached an affidavit averring he complied with Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013).

### D. The Trial Court's Rulings

In May 2016, the trial court conducted a hearing on postconviction counsel's motion to withdraw. Counsel noted that he had met with defendant and explained to defendant why counsel believed the claims were meritless. Defendant objected to counsel's motion to withdraw. The trial court granted postconviction counsel's motion but did not rule on the State's motion to dismiss. The circuit clerk filed a notice of appeal on defendant's behalf. This court concluded the motion to withdraw was not a final order from which defendant could appeal; accordingly, we lacked jurisdiction to review defendant's claim. *Fathauer*, 2017 IL App (4th) 160364-U, ¶ 18. We remanded the case for further proceedings. *Id.* ¶ 20.

In March 2018, the trial court granted the State's motion to dismiss.

This appeal followed.

### II. ANALYSIS

Defendant appeals, arguing the trial court erred by granting postconviction counsel's motion to withdraw because (1) defendant's petition stated a claim for ineffective assistance of counsel and (2) postconviction counsel rendered ineffective assistance by failing to amend the *pro se* petition. We disagree and affirm.

### A. The Applicable Law

The Act provides a criminal defendant the means to redress substantial violations of his constitutional rights that occurred in his original trial or sentencing. *People v. Crenshaw*, 2015 IL App (4th) 131035, ¶ 23, 38 N.E.3d 1256; 725 ILCS 5/122-1 (West 2014). The Act contains a three-stage procedure for relief. *People v. Allen*, 2015 IL 113135, ¶ 21, 32 N.E.3d 615; 725 ILCS 5/122-2.1 (West 2014). Within the first 90 days after the petition is filed and docketed, the trial court shall dismiss a petition summarily if the court determines it is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2014). A petition may be dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact. *Allen*, 2015 IL 113135, ¶ 25. "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation. An example of an indisputably meritless legal theory is one which is completely contradicted by the record." *People v. Hodges*, 234 Ill. 2d 1, 16, 912 N.E.2d 1204, 1212 (2009).

Because most postconviction petitions are drafted by *pro se* defendants, "the threshold for a petition to survive the first stage of review is low." *Allen*, 2015 IL 113135, ¶ 24. If a petition alleges sufficient facts to state the gist of a constitutional claim, first-stage dismissal is inappropriate. *Id.* If the petition is not dismissed as being frivolous or patently without merit, then the trial court orders the petition to be docketed for further consideration. 725 ILCS 5/122-2.1(b) (West 2014).

¶ 41    At the second stage, the trial court appoints counsel, who must then investigate defendant's claims and make any amendments necessary for an adequate presentation of defendant's contentions. Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013). The State may file a motion to dismiss the petition, and the petition advances to a third-stage evidentiary hearing only if defendant makes a "substantial showing of a constitutional violation." (Internal quotation marks omitted.) *People v. Johnson*, 2018 IL App (5th) 140486, ¶ 22, 99 N.E.3d 1.

¶ 42    The right to counsel in postconviction proceedings is statutory rather than constitutional, and therefore a defendant is entitled only to the level of assistance guaranteed by the Act. *People v. Greer*, 212 Ill. 2d 192, 203, 817 N.E.2d 511, 518-19 (2004). The Illinois Supreme Court has determined that the Act and Rule 651 require appointed counsel to provide only reasonable assistance, a lower standard than that which the constitution requires at trial. *Kuehner*, 2015 IL 117695, ¶ 15. Rule 651(c) outlines certain duties that postconviction counsel must perform in order to provide reasonable assistance. *Id.* Counsel must (1) consult with the defendant to determine the issues defendant wants to raise, (2) examine the record of the proceedings in the trial court, and (3) make any amendment to the petition necessary to adequately preserve defendant's contentions. *Id.* However, postconviction counsel is not required to present frivolous or meritless claims and must withdraw if counsel cannot advance any arguably meritorious claims. *Id.*

¶ 43    The requirements postconviction counsel must meet to withdraw vary depending on how the petition advanced to the second stage. See *id.* ¶ 19. If the petition advanced by default—that is, the trial court did not take any action on the petition within 90 days of filing—counsel "should make some effort to explain why defendant's claims are frivolous or patently without merit." (Emphasis omitted.) *Greer*, 212 Ill. 2d at 212. However, a trial court may grant a motion to withdraw in such a case when the record has demonstrated "in fact" that defendant's claims are patently without merit and counsel has complied with Rule 651(c). *Kuehner*, 2015 IL 117695, ¶ 16.

¶ 44    When a trial court advances a petition to the second stage within 90 days, it is presumed that the court has made a finding that the petition was not frivolous or patently without merit on its face. *Johnson*, 2018 IL App (5th) 140486, ¶ 42; *Kuehner*, 2015 IL 117695, ¶ 20. In this instance, when postconviction counsel determines a motion to withdraw is necessary, counsel is essentially filing a motion to reconsider the trial court's initial ruling. *Kuehner*, 2015 IL 117695, ¶ 21. As a result, "appointed counsel owes the trial court at least some explanation as to why, despite its superficial virtue, the *pro se* petition is *in fact* frivolous or patently without merit, and counsel owes this explanation with respect to each of the defendant's *pro se* claims." (Emphasis in original.) *Id.* Similar to a motion to reconsider, a motion to withdraw "does not ask the trial court to conduct its first-stage assessment a second time but rather seeks to bring to the trial court's attention information that was not apparent on the face of the *pro se* petition at the time such assessment was made." *Id.*

¶ 45                              B. The *Kuehner* Analysis in This Case

¶ 46        Defendant first argues postconviction counsel should not have been permitted to withdraw because his petition stated the gist of a constitutional claim of ineffective assistance of trial counsel. Specifically, defendant asserts the petition alleges trial counsel (1) failed to investigate police interviews of Trudeau and (2) "fail[ed] to effectively cross-examine Trudeau with his prior inconsistent statements and counsel's failure to challenge Trudeau's credibility."

¶ 47        *Kuehner* requires a two-step analysis. First, we determine whether the trial court advanced the petition to the second stage on the merits based upon its conclusion that the petition stated the gist of a constitutional claim. See *id.* ¶¶ 18-20. Second, we evaluate whether postconviction counsel provided "at least some explanation as to why, despite its superficial virtue, the *pro se* petition [was] *in fact* frivolous or patently without merit *** with respect to each of the defendant's *pro se* claims." (Emphasis in original.) *Id.* ¶ 21.

¶ 48        Here, the State does not argue that the petition was not advanced to the second stage on the merits, and the record demonstrates that the trial court appointed counsel well within the 90-day time limit. Because the court advanced the petition to the second stage, we presume that the trial court made an initial determination that defendant's petition stated the gist of a constitutional claim. Appointing counsel is all that the Act requires to advance a petition to the second stage, and the trial court need not comment on the potential merit of a defendant's *pro se* claims.

¶ 49        Regarding the second step, defendant raised four issues in his petition, and postconviction counsel addressed each of those four issues in his motion to withdraw. Before this court, defendant does not argue that postconviction counsel failed to procedurally comply with *Kuehner*. Instead, defendant argues the trial court's decision to allow postconviction counsel to withdraw was incorrect on the merits because his petition stated the gist of a constitutional claim of ineffectiveness of trial counsel.

¶ 50        Nevertheless, before reaching the merits, we need to address postconviction counsel's compliance with *Kuehner*. The Illinois Supreme Court clearly stated in *Kuehner* that, "if we were willing to say in *Greer* that a motion to withdraw *should* include such explanations when the petition advances to stage two by default, we are now prepared to say that such a motion *must* include such explanations when the petition advances to the second stage by affirmative judicial action." (Emphases in original.) *Id.* "[T]he burden for establishing that [the petition's claims in fact lack merit] rests squarely on appointed counsel," and counsel must "make that case with respect to each and every *pro se* claim asserted." *Id.* ¶ 22. Counsel is required to "reduce his or her findings to writing and to include them in the motion to withdraw so that both the trial court and the reviewing courts have a basis for evaluating counsel's conclusion." *Id.* The court "h[e]ld that, where appointed counsel is either unable or unwilling to make that case with respect to each of the *pro se* claims contained in the petition, appointed counsel's motion to withdraw *must* be denied." (Emphasis added.) *Id.* Accordingly, we must address whether postconviction counsel (1) provided some information that was not apparent on the face of the petition that (2) demonstrated each of defendant's *pro se* claims was in fact frivolous and patently without merit.

¶ 51                        1. *Information Not on the Face of the Petition*

¶ 52        In *Kuehner*, the supreme court explained that postconviction counsel's responsibility was not to "evaluat[e] the facial sufficiency of defendant's *pro se* petition" because the trial court

had already made the determination that the petition "on its face *** was neither frivolous nor patently without merit." *Id.* ¶ 20. Thus, the court concluded that a motion to withdraw, similar to a motion to reconsider, "does not ask the trial court to conduct its first-stage assessment a second time but rather seeks to bring to the trial court's attention information that was not apparent on the face of the *pro se* petition at the time such assessment was made." *Id.* ¶ 21.

¶ 53     The information that was not apparent on the face of defendant's *pro se* petition included (1) the full trial transcript of Trudeau's testimony and (2) this court's decision on direct appeal. We conclude that these types of information are consistent with what the supreme court had in mind when it referenced "information that was not apparent on the face of the *pro se* petition." *Id.*

¶ 54     Defendant's *pro se* petition made four different claims of a constitutional deprivation. In support of those claims, he attached transcripts of Trudeau's interviews and select portions of Trudeau's testimony at trial. Given that the trial court had nothing else to consider when it evaluated defendant's *pro se* petition at the first stage, the court concluded that defendant's *pro se* petition met the low threshold of stating the gist of a constitutional claim. However, when postconviction counsel provided the trial court with the full transcript of Trudeau's testimony and this court's decision on direct appeal, counsel was calling the court's attention to information that was not apparent at the time the court assessed the facial validity of defendant's *pro se* petition as contemplated by *Kuehner*. Counsel's doing so met *Kuehner*'s requirement that, in support of counsel's motion to withdraw, counsel must provide "at least some explanation as to why *** the *pro se* petition is *in fact* frivolous or patently without merit." (Emphasis in original.) *Id.*

¶ 55     In this case, the judge that had presided over defendant's trial retired before defendant filed his postconviction petition. Because the judge who reviewed the postconviction petition was different from the judge who conducted the trial, it is likely that the judge only reviewed the facial validity of the petition and did not comb through the record. However, even a judge that conducted a defendant's trial would not be expected to remember the prior proceedings without assistance.

¶ 56     The Illinois Supreme Court has stated that, when reviewing a *pro se* postconviction petition at the first stage, "[t]he court is further foreclosed from engaging in any fact-finding or any review of matters beyond the allegations of the petition." *People v. Boclair*, 202 Ill. 2d 89, 99, 789 N.E.2d 734, 741 (2002). However, it has also noted that section 122-2.1(c) of the Act states a trial court "*may* examine the court file of the proceeding in which the petitioner was convicted, any action taken by an appellate court in such proceeding and any transcripts of such proceeding." (Emphasis added.) 725 ILCS 5/122-2.1(c) (West 2002); *People v. Blair*, 215 Ill. 2d 427, 446, 831 N.E.2d 604, 616 (2005). The trial court *may* also look to these sources to determine if the petition's factual or legal allegations are rebutted. *Blair*, 215 Ill. 2d at 446.

¶ 57     Although a trial court *may* examine the record, including any appeal and transcripts of proceedings, the court is not *required* to do so at the first stage, and it is certainly not required to scour the record to determine the petition's merit. Review of a defendant's *pro se* petition is meant to be quick; the trial court has just 90 days to determine if a petition is frivolous or patently without merit. Experience shows that trial courts frequently rely only on the *pro se* petition itself, and this is to be expected. In short, a trial court at the first stage is not expected or required to review the common-law record or the report of proceedings.

¶ 58    Here, postconviction counsel may have realized that the judge evaluating the *pro se* petition was unfamiliar with defendant's case, and counsel may have found it appropriate to simply point out that defendant's *pro se* arguments (1) were contradicted by the record and (2) had been raised on direct appeal and rejected by this court. But even if that had not been the case, if after reviewing the record and speaking with the defendant, postconviction counsel determines that all of defendant's claims are barred by *res judicata* or contradicted by the record, counsel has an ethical obligation to move to withdraw if he reasonably believes that the trial court erred when it found defendant's petition had facial merit. *Kuehner*, 2015 IL 117695, ¶ 22.

¶ 59    *2. Explanation That Each Claim Is in Fact Meritless*

¶ 60    Having determined that counsel properly moved to withdraw based on information that was not apparent on the face of the *pro se* petition, we now address whether counsel provided at least some explanation as to why each *pro se* claim lacked merit. As we noted earlier, defendant does not argue on appeal that postconviction counsel failed to address each claim, and our review of the record confirms that counsel addressed all of the claims raised in defendant's petition. Instead, defendant argues that postconviction counsel should have recognized that defendant had stated a meritorious claim that trial counsel provided ineffective assistance. Namely, trial counsel was ineffective for failing to "effectively" cross-examine Trudeau to "destroy" his credibility. Defendant points out several differences between Trudeau's answers in the interview transcripts and his trial testimony, and defendant suggests that, had trial counsel impeached Trudeau with those differences, there is a reasonable probability of a different outcome.

¶ 61    In his motion, postconviction counsel addressed this claim and demonstrated it was in fact contradicted by the record. See *Hodges*, 234 Ill. 2d at 16 ("An example of an indisputably meritless legal theory is one which is completely contradicted by the record."). In his motion to withdraw, postconviction counsel stated as follows:

> "Petitioner also asserts that trial counsel's lack of pretrial investigation deprived him of a potential defense. Specifically, Petitioner argues that if trial counsel had investigated the initial interview Trudeau gave on May 22, 2010, and presented this interview at trial, then Petition[er] would not have been convicted by false testimony.
>
> There is no evidence that appears from the record to support the conclusion that Trudeau gave false testimony at trial. Trial counsel had the opportunity to cross[-]examine Trudeau about the interviews he gave and the veracity of the statements he made to the police during his interviews on May 22, 2010. *In fact, trial counsel did cross[-]examine Trudeau on these matters.* [Citation.] Therefore, Petitioner has not demonstrated a deficient performance by trial counsel that caused him prejudice." (Emphasis added.)

¶ 62    Our review of the trial testimony confirms postconviction counsel's assertions. Trial counsel was in fact aware of all three of Trudeau's interviews and specifically cross-examined Trudeau regarding his prior statements in those interviews. Trial counsel even went so far as to read directly from portions of the interview transcripts in an effort to confront Trudeau with his inconsistent statements. "Generally, the decision whether or not to cross-examine or impeach a witness is a matter of trial strategy which will not support a claim of ineffective assistance of counsel." *People v. Pecoraro*, 175 Ill. 2d 294, 326, 677 N.E.2d 875, 891 (1997).

"Defendant can only prevail on an ineffectiveness claim by showing that counsel's approach to cross-examination was objectively unreasonable." *Id.* at 327. Accordingly, in his motion to withdraw, postconviction counsel presented the record, which contradicted defendant's allegations, and provided an explanation that defendant's postconviction petition was in fact meritless because Trudeau was in fact cross-examined. Although cross-examination could have been done differently, defendant's claims that (1) trial counsel's cross-examination was so deficient that it caused defendant prejudice or (2) the cross-examination was anything other than the product of trial strategy are completely without merit.

¶ 63 Moreover, this court's prior decision on defendant's direct appeal confirms that Trudeau was "effectively" cross-examined. We noted that "Trudeau admitted his testimony differed from what he initially told the police during his three interviews." *Fathauer*, 2013 IL App (4th) 120424-U, ¶ 20. We further noted as follows:

"The jury was informed of Trudeau's conduct and pending methamphetamine-related charges, as well as Trudeau's alleged purchase of stolen auto parts. Defense counsel cross-examined Trudeau regarding his motive to lie and of his anticipation of receiving probation for the offense. The jury, who heard Trudeau and the other witnesses testify, apparently believed Trudeau, in spite of his alleged motive to lie and his methamphetamine addiction. This determination lies within the role of the jury. [Citation.] The record does not establish this decision was unreasonable or unreliable." *Id.* ¶ 38.

¶ 64 Despite defendant's claims, postconviction counsel was therefore correct when he stated that "[t]rial counsel effectively cross[-]examined five of the State's nine witnesses" and "[defendant] has not demonstrated a deficient performance by trial counsel that caused him prejudice." Accordingly, postconviction counsel's motion to withdraw (1) brought "to the trial court's attention information that was not apparent on the face of the *pro se* petition at the time" the court determined it had merit and (2) explained "why, despite its superficial virtue, the *pro se* petition [was] *in fact* frivolous or patently without merit" as to each and every claim. (Emphasis in original.) *Kuehner*, 2015 IL 117695, ¶ 21.

¶ 65 We note that postconviction counsel cited *Kuehner* in his motion to withdraw, and at the hearing on his motion, counsel reiterated to the trial court that this court had previously reviewed defendant's contentions about the credibility of Trudeau. Citing recent Illinois Supreme Court precedent directly on point is always a good idea, and we commend postconviction counsel for doing so. We further note that attorneys appointed in postconviction proceedings who believe they must withdraw would be well served by making explicit, both in their motion and at any hearing, the information not apparent on the face of the *pro se* petition that counsel is bringing to the trial court's attention. Additionally, although not required, trial courts would do well to make an explicit finding that postconviction counsel complied with *Kuehner* and set forth on the record (1) the additional information postconviction counsel brought to the court's attention and (2) that counsel has addressed each of defendant's *pro se* claims.

¶ 66                              C. Ineffective Assistance of Postconviction Counsel

¶ 67 Defendant also asserts he was denied effective assistance of postconviction counsel because counsel should have amended his *pro se* petition to demonstrate that trial counsel failed to effectively cross-examine Trudeau. However, as we have just explained, any such

argument was contradicted by the record, and "an indisputably meritless legal theory is one which is completely contradicted by the record." *Hodges*, 234 Ill. 2d at 16. Postconviction counsel could not have been ineffective for failing to assert a meritless claim. *Greer*, 212 Ill. 2d at 205 (explaining that counsel is not required to advance frivolous claims because such claims are not "necessary" within the meaning of Rule 651(c)).

¶ 68     Further, we note that the record demonstrates that postconviction counsel complied with Rule 651(c). In addition to his Rule 651(c) affidavit, at the hearing on his motion to withdraw, postconviction counsel repeatedly mentioned that he had met with defendant and explained why he felt he had to withdraw from representation. Defendant acknowledged these efforts but expressed his disagreement with counsel's decision. The Act entitles defendant to a reasonable level of assistance, and a defendant receives such assistance when counsel complies with the requirements of Rule 651(c). *Kuehner*, 2015 IL 117695, ¶ 15. Based on our review of the record, we conclude that postconviction counsel in fact "(1) consulted with the petitioner to ascertain his allegations of deprivation of constitutional rights; (2) examined the record of proceedings at trial; and (3) made any amendments to [the] *pro se* petition[ ] that [were] necessary to adequately present the petitioner's allegations." *Id.*

¶ 69                                    III. CONCLUSION
¶ 70     For the reasons stated, we affirm the trial court's judgment.

¶ 71     Affirmed.