NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 220934-U

NO. 4-22-0934

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 29, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Hancock County |
| SHAWN L. DeHAVEN, | ) | No. 21CF12 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Rodney G. Clark, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Cavanagh and Harris concurred in the judgment.

**ORDER**

¶ 1  *Held:*  The appellate court affirmed the trial court's first-stage dismissal of defendant's postconviction petition because plea counsel was not ineffective for failing to raise the issue of defendant's fitness to stand trial.

¶ 2  In June 2021, defendant, Shawn L. DeHaven, pleaded guilty to aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(3) (West 2020)) as part of a fully negotiated plea, and the trial court sentenced him to 18 years in prison.

¶ 3  In August 2022, defendant filed a petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)), asserting, in pertinent part, he was denied his constitutional right to the effective assistance of counsel because defense counsel failed to request a fitness evaluation to determine defendant's competency to plead guilty.

¶ 4  The trial court summarily dismissed the petition, concluding it was frivolous and patently without merit.

¶ 5 Defendant appeals, arguing the trial court erred by summarily dismissing his postconviction petition because he stated the gist of a constitutional claim that defense counsel was ineffective for failing to (1) investigate an insanity defense and (2) request a fitness evaluation.

¶ 6 We affirm.

¶ 7 I. BACKGROUND

¶ 8 A. The Charges and Preliminary Hearings

¶ 9 1. *The Charges*

¶ 10 In February 2021, the State charged defendant with aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(3) (West 2020)) and unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)). The charges alleged that on February 10, 2021, in Dallas City, Illinois, defendant knowingly discharged a firearm in the direction of three sheriff's deputies after having previously been convicted of a felony for possession of methamphetamine manufacturing material.

¶ 11 2. *The Detention Hearing*

¶ 12 Later that month, defendant appeared in court for a detention hearing. After informing defendant of the charges and possible penalties, the trial court asked defendant if he wished to have an attorney appointed for him. Defendant answered affirmatively, and the court appointed Kameron Miller. Upon hearing appointed counsel's name, defendant stated, "Me and him don't get along. You guys have scripted this. This is scripted. You're doing this on purpose." The following exchange then occurred:

"THE COURT: All right. Mr. Miller is appointed and will represent you for purposes of setting bail.

THE DEFENDANT: (Inaudible) This is scripted. Scripted, this is scripted. Ever since the beginning of this, scripted. In Dallas City, it was scripted. Always

scripted, (inaudible). I can guarantee it.

THE COURT: [Defendant], if you can be quiet for a moment so I don't have to find you in contempt of court.

THE DEFENDANT: I don't give a shit.

THE COURT: All right. I'm finding [defendant] in direct criminal contempt of court for his use of foul language and continuing to speak after I asked him not to. I'm going to sentence [defendant] to 30 days in the county jail starting today's date regardless of whatever the bail may be."

¶ 13      The trial court then asked the State for its bail recommendation. The State answered that defendant had a "significant criminal history" and then stated the following:

"Most recently he was convicted on February 8th—I'm sorry, yes, February 8th of aggravated fleeing and eluding in Hancock County, Illinois, and was released at that time. He had been out for somewhere in the area of 36 hours at the time that this offense was committed."

¶ 14      The State requested bail be set at a minimum of $750,000. Defense counsel argued that amount was excessive. The following exchange occurred:

"THE COURT: I want to make sure I understood everything correctly. He was in custody up until the 8th when he reached a plea agreement?

[THE PROSECUTOR]: Yes, sir. I believe he'd been in custody for around 150 days.

THE COURT: Was he represented by counsel on those charges?

[THE PROSECUTOR]: He was. He was represented by Mr. Stuckart in that case. Mr. Stuckart cannot represent him on this case though due to other individual

that may be involved.

THE COURT: I see. Okay. All right. I'm going to set bail at 500,000[.]"

¶ 15                              3. *The Preliminary Hearing*

¶ 16        Later in February 2021, the court conducted a preliminary hearing, at which the arresting officer testified extensively about the events resulting in defendant's being charged. In summary, the officer testified that he responded to a call that a man, whom he later identified as defendant, was standing in a roadway brandishing a gun. The officer, along with three other members of law enforcement, engaged defendant in conversation and attempted to get him to drop the weapon. Defendant repeatedly made statements that he was going to "make fucking cops do your job" and at one point fired a single shot in the direction of the officers. Eventually, defendant's friend, Tammy Gittings, convinced defendant to come into her house and then surrender to the police, which he did without further incident. Immediately after defendant was placed in handcuffs, he was transported to a local hospital.

¶ 17                              4. *The Motion for New Counsel*

¶ 18        Also in February 2021, defendant *pro se* filed a motion for new counsel, alleging a conflict of interest because Miller represented defendant's brother in another criminal proceeding, and defendant intended to call his brother as a witness at trial.

¶ 19        In March 2021, the trial court conducted a hearing on the motion, at which Miller explained that he spoke with defendant about the alleged conflict and informed him that defendant was mistaken about whom Miller represented. The court asked defendant if he understood, and defendant replied, "Yeah, I do now." The court denied the motion.

¶ 20        However, at a subsequent hearing on the same issue, Miller advised the trial court that he had been mistaken and he *did* represent defendant's brother in a different criminal case.

- 4 -

Miller requested leave to withdraw, which the court granted, and the court appointed new counsel.

¶ 21                                    5. *The Plea Offer*

¶ 22            In April 2021, defendant's new counsel informed the trial court that the State was going to make a plea offer. Counsel had spoken with defendant about the possibility of conducting a conference pursuant to Illinois Supreme Court Rule 402(d) (eff. July 1, 2012), and defendant was willing to participate if one were scheduled.

¶ 23            In May 2021, the trial court conducted a Rule 402 conference. Prior to the conference, the court admonished defendant consistent with Rule 402, defendant responded appropriately and stated he understood, and the court found the defendant knowingly and voluntarily agreed to participate in the conference.

¶ 24            In June 2021, the trial court conducted a hearing on defendant's waiver of his right to a jury trial. The State and defense counsel informed the court that they had reached a fully negotiated plea agreement that would be entered at a later date. The court reviewed defendant's written jury waiver, confirmed defendant read the waiver, discussed it with counsel, and confirmed with defendant that he signed it voluntarily. The court then admonished defendant orally concerning the rights he was waiving. The court found that defendant had knowingly and voluntarily waived his jury trial right.

¶ 25                                  B. The Guilty Plea Hearing

¶ 26            In June 2021, the trial court conducted a guilty plea and sentencing hearing. In exchange for defendant's pleading guilty to aggravated discharge of a firearm, the State agreed to dismiss the unlawful possession of a weapon charge and defendant would receive a prison sentence of 18 years.

¶ 27            The trial court inquired as follows:

"THE COURT: Okay. How far did you go in school, sir?

THE DEFENDANT: I have an Associate's Degree in Liberal Studies.

THE COURT: That would lead me to believe you're able to read and write the English language; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: [Defense counsel] has shown you a variety of documents, including documents today. Have you been able to read all the documents that he has shown you?

THE DEFENDANT: Yes, sir.

THE COURT: And knowing [defense counsel], he has actually gone over those documents with you; is that correct.

THE DEFENDANT: Yes, sir.

THE COURT: [Defense counsel] has given you advice as your counsel. Have you been satisfied with his advice as your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: I note that you're in custody. Are you under the influence of any drugs or alcohol today?

THE DEFENDANT: No.

THE COURT: Do you take any prescriptions that would interfere with your ability to understand what's going on here today?

THE DEFENDANT: No, sir.

THE COURT: Do you feel that you're of clear mind today?

THE DEFENDANT: Yes, sir.

THE COURT: And you had authorized [defense counsel] to enter into negotiations to get this resolved on your behalf with the State; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: I have in front of me a plea of guilty. On page 2 appears to be a signature. Is that your signature on that document, sir?

THE DEFENDANT: Yes, sir.

* * *

THE COURT: [Defendant], with regard to the plea that you've acknowledged that you signed, did you review it with [defense counsel] prior to signing it?

THE DEFENDANT: Yes, I did, sir.

THE COURT: You were able to ask him any question that you had with regard to the ramifications associated with pleading guilty to this specific Class X felony—

THE DEFENDANT: Yes.

THE COURT: —is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Did you then sign this plea as your free and voluntary act?

THE DEFENDANT: Yes, sir.

THE COURT: Did anybody force you or threaten you in any way to get you to do this today?

THE DEFENDANT: No, sir.

THE COURT: The Court's going to find there's a factual basis for the written plea; that it's been knowingly, voluntarily, and understandingly made.

* * *

THE COURT: And the proposal is to sentence the Defendant *** to 18 years, with 3 years of mandatory supervised release; is that correct?

[THE PROSECUTOR]: Yes, Your Honor.

[DEFENSE COUNSEL]: Correct.

THE COURT: And, [defendant], I apologize. I forgot when I was going through the maximum penalties, I was merely reading, and I did not address with you the three years of mandatory supervised release.

You understand that upon your release, there will be that three-year-parole time period; do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. All right. Does that change what you're wanting to do in any way today?

THE DEFENDANT: No.

THE COURT: Okay. All right.

[THE PROSECUTOR]: May I address the Court?

THE COURT: Yes.

[THE PROSECUTOR]: Did the Court also go over the fact that this is an 85 percent sentence?

THE COURT: I was just about to.

And, [defendant], you understand that a sentence of this nature, you'll be required to serve it, 85 percent of it; do you understand that, sir?

THE DEFENDANT: Yes, sir.

THE COURT: Does that in any way change how you wish to proceed here today?

THE DEFENDANT: No.

THE COURT: Okay. All right. And I believe what I had recommended was a period of 20 years, but I will concur in what the parties have reached outside my recommendation during the 401(d) [*sic*] conference."

¶ 28 At the end of the hearing, defendant's plea counsel stated as follows:

"[DEFENSE COUNSEL]: Your Honor, the only thing I'd say is [defendant's] been very cooperative throughout this proceeding. He's been on top of it, has called me, written me, written the state's attorney, been very polite, very polite to jail staff from what I've seen. I just want the Court to know that.

THE COURT: I appreciate that as well. ***

*** And I hope you're able to get out and do something productive with your life and—because you're going to have that opportunity. Ultimately it's up to you. Hopefully you can engage in some programs while you're in prison this time. And we'll go from there."

¶ 29                    C. The Postconviction Proceedings

¶ 30 In August 2022, defendant *pro se* filed a petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)), alleging that trial counsel was ineffective for failing to (1) investigate alibi witnesses, (2) pursue a fitness evaluation, (3) request

(a) forensic testing of the gun and the bullet found at the scene of the crime and (b) gunshot residue (GSR) testing of defendant, and (4) challenge the search warrant of Gittings's home, where the gun was located. Defendant also alleged that (1) the trial court erred by accepting his guilty plea because he was unfit to stand trial and (2) his guilty plea was not knowing and voluntary because the State did not disclose the results of (a) the forensic testing of a gun and a bullet and (b) the GSR testing.

¶ 31     Relevant to this appeal, the postconviction petition alleged the following:

"Trial counsel failed to order a fitness evaluation due to Defendant's mental health. Defendant was diagnosed bipolar with depression, prior to being arrested. Defendant was on medication during the time of pleading guilty.

The court did not inquire whether [defendant] was taking medication, inquire about discussions with his attorney, or ask him directly about his mental health. The Defendant was unfit to plead guilty.

Defendant had always maintained to his trial counsel that he suffered from mental health issues, and Defendant pleaded guilty because of undue pressure and a minimal understanding of events occurring around him.

Counsel may not have believed that Defendant was incompetent. However, a lawyer is not entitled to rely on his own belief about a defendant's mental condition, but instead must make a reasonable investigation. ***

Trial counsel never motioned the court for a competency hearing. Therefore, to accept Defendant's plea of guilt was improper."

¶ 32     In support, defendant attached (1) his own affidavit, (2) an affidavit from Tammy Gittings, (3) medical records, including after-care instructions and medication lists from

appointments on February 18 and 25, 2021, and (4) a psychological evaluation from the morning of February 9, 2021.

¶ 33    In his affidavit, defendant asserted, in relevant part, as follows:

"I was on so much medication and under so much mental duress over my brother killing my dad, I was not of a sound mind when I took that plea-Bargain. My attorney pushed me into it."

¶ 34    Gittings also submitted an affidavit that was consistent with the testimony at the probable cause hearing.

¶ 35    The psychiatric evaluation dated February 9, 2021, was signed by "Michael T. Gadson, M.D." and contained a summary of defendant's mental health history and current symptoms. The evaluation stated that defendant had been receiving psychiatric treatment since age 13, had previously been prescribed Xanax and Cymbalta, and was previously diagnosed with "Bipolar Dis, depression, anxiety." The evaluation further stated that defendant had been "out of jail for 2 days" and wanted drug treatment. The evaluation noted defendant was experiencing paranoia and auditory hallucinations. The evaluation contained a recommended medication change to discontinue Xanax and Cymbalta and start Wellbutrin and Klonopin.

¶ 36    The medical records from February 18 and 25 provided the following information. Defendant was seen by a nurse practitioner to address defendant's bipolar disorder and "intermittent explosive disorder in adult." On February 18, defendant was prescribed Risperdal, to be taken at night, and his prescription for Xanax was adjusted by increasing the dosage.

¶ 37    On February 25, the instructions in the "After Visit Summary" stated the following: "we will be restarting medications patient was previously stable on before changes were made;" "asked [staff member at the Hancock County jail] to pass on to the patient he will notice a change

in his medications and it is because we changed his medications to the previous treatment plan he preferred;" and "Dr. Gadsen, Psychiatrist, and Joe, Counselor are aware of medications changes and both agree to current treatment and medication plan requested by Patient, lead CO Kelly, and PCP."

¶ 38                                      D. The Trial Court's Order

¶ 39          In September 2022, the trial court entered a written order dismissing defendant's petition. According to the court, defendant asserted claims of "ineffective assistance of counsel, the court never inquired as to his mental health or medication he was on and that he was unfit to plead guilty." The court stated that it had reviewed the record, the petition, and the documents attached thereto and found the petition to be frivolous and patently without merit. The court explained its finding as follows: "The Court inquired of the Defendant as to whether he took medication and whether he was of 'clear mind.' The Defendant stated he did not take medication and that he was of 'clear mind.' "

¶ 40          This appeal followed.

¶ 41                                      II. ANALYSIS

¶ 42          Defendant appeals, arguing the trial court erred by summarily dismissing his postconviction petition because he stated the gist of a constitutional claim that defense counsel was ineffective for failing to (1) investigate an insanity defense and (2) request a fitness evaluation. We affirm.

¶ 43                                      A. The Applicable Law

¶ 44          The Act provides a criminal defendant the means to redress substantial violations of his constitutional rights that occurred in his original trial or sentencing. *People v. Fathauer*, 2019 IL App (4th) 180241, ¶ 40, 146 N.E.3d 175; 725 ILCS 5/122-1 (West 2020). The Act

contains a three-stage procedure for relief. *Fathauer*, 2019 IL App (4th) 180241, ¶ 40 (citing *People v. Allen*, 2015 IL 113135, ¶ 21, 32 N.E.3d 615); 725 ILCS 5/122-2.1 (West 2022). Within the first 90 days after the petition is filed and docketed, the trial court shall dismiss a petition summarily if the court determines it is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2022). A petition may be dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact. *Fathauer*, 2019 IL App (4th) 180241, ¶ 40 (citing *Allen*, 2015 IL 113135, ¶ 25). "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation. An example of an indisputably meritless legal theory is one which is completely contradicted by the record." *People v. Hodges*, 234 Ill. 2d 1, 16, 912 N.E.2d 1204, 1212 (2009).

¶ 45        Because most postconviction petitions are drafted by *pro se* defendants, "the threshold for a petition to survive the first stage of review is low." (Internal quotation marks omitted.) *Fathauer*, 2019 IL App (4th) 180241, ¶ 40. If a petition alleges sufficient facts to state the gist of a constitutional claim, first-stage dismissal is inappropriate. *Id.* This court reviews first-stage dismissals under a *de novo* standard of review. *Allen*, 2015 IL 113135, ¶ 25.

¶ 46        "To demonstrate ineffective assistance of counsel, a defendant must show that (1) the attorney's performance fell below an objective standard of reasonableness and (2) the attorney's deficient performance prejudiced the defendant in that, absent counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different." *People v. Jackson*, 2020 IL 124112, ¶ 90, 162 N.E.3d 223 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "A reasonable probability is a probability which undermines confidence in the outcome of the trial." *People v. Sturgeon*, 2019 IL App (4th) 170035 ¶ 84, 126 N.E.3d 703. "Because the defendant must satisfy both prongs of this test, the failure to

establish either is fatal to the claim." *Jackson*, 2020 IL 124112, ¶ 90 (citing *Strickland*, 466 U.S. at 697).

¶ 47                                  B. This Case

¶ 48                        1. *The Postconviction Petition, Liberally Construed,*

*Did Not Allege an Insanity Defense*

¶ 49        Defendant first argues that his *pro se* petition stated the gist of a constitutional claim of ineffective assistance of counsel based on trial counsel's failure to investigate a possible insanity defense. Defendant asserts the medical records attached to the petition demonstrate he was experiencing auditory hallucinations and paranoia on the day of the offense. He contends the allegations in the petition are broad enough to infer a claim that trial counsel should have raised an insanity defense. Defendant relies specifically on the allegation that he "had always maintained to his trial counsel that he suffered from mental health issues, and Defendant pleaded guilty because of undue pressure and a minimal understanding of events occurring around him" as support for stating the gist of a claim beyond his fitness at the guilty plea hearing. We disagree.

¶ 50        We earlier set forth the allegations in defendant's petition relating to his fitness and mental health, including the statements from his affidavit. *Supra* ¶¶ 30-37. Construing those allegations as a whole and in the context of the entire petition, we conclude that no reasonable interpretation exists to infer that defendant was raising insanity as an issue that counsel should have investigated.

¶ 51        Defendant first faulted his counsel for failing to investigate and call alibi witnesses who would have said he did not have or discharge a firearm on the night of his arrest. These allegations were clear and specific that counsel was ineffective for failing to investigate a viable defense to the charges—namely, that he was not present and did not have a gun *at the time of the*

*offense*.

¶ 52    By contrast, defendant's second assertion of deficient performance was equally clear and specific that (1) counsel failed to investigate his fitness to stand trial and (2) he "*was unfit to plead guilty*." (Emphasis added.) By way of example, defendant alleged "[t]rial counsel failed to order a fitness evaluation," "Defendant was on medication *during the time of pleading guilty*," and "[t]rial counsel never motioned the court for a Competency hearing. Therefore, to accept Defendant's plea of guilt was improper." (Emphasis added.) The allegations in the petition were very specific that defendant was asserting counsel erred, first, by not investigating an alibi defense from witnesses *present at the time of the offense*, and second, by not raising or investigating defendant's fitness *at the time he pleaded guilty*.

¶ 53    In defendant's affidavit, he states, "I was on so much medication and under so much mental duress over my brother killing my dad, I was not of a sound mind *when I took that plea-Bargain*. My attorney pushed me into it." (Emphasis added.) If defendant were asserting an insanity defense, he would have said the same thing about his mental state *at the time of the offense*, just like he did when he alleged the failure to investigate alibi witnesses.

¶ 54    Given this context, we disagree with defendant's assertions on appeal that he lacked an understanding of the nuanced differences between fitness to stand trial and insanity as a defense. Accepting defendant's argument would require stretching the allegations in the petition beyond the bounds of reasonable inference.

¶ 55       2. *Defendant's Claim of Unfitness Is Contradicted by the Record*

¶ 56    Defendant next argues that his petition stated the gist of a constitutional claim that he was unfit when he pleaded guilty and counsel was ineffective for failing to obtain a fitness evaluation.

¶ 57 "The competency standard to plead guilty or stand trial is the same, *i.e.*, the defendant must understand the nature of the charge and purpose of the proceedings and be able to assist in his defense." *People v. Tapscott*, 386 Ill. App. 3d 1064, 1075, 899 N.E.2d 597, 607 (2008) "Fitness speaks only to a person's ability to function within the context of trial; it does not refer to sanity or competence in other areas. [Citation.] A person can be fit for trial although his mind may be otherwise unsound." *People v. Coleman*, 168 Ill. 2d 509, 524, 660 N.E.2d 919, 928 (1995). "Factors that are relevant for the trial court to consider in assessing the existence of a *bona fide* doubt of the defendant's fitness include (1) the rationality of the defendant's behavior and demeanor at trial and (2) any prior medical opinions on the issue of the defendant's fitness." *Tapscott*, 386 Ill. App. 3d at 1075-76. "Further, defense counsel's representations concerning his client's competency, while not conclusive, are another important factor to consider." *Id.* at 1076.

¶ 58 We earlier set forth, in detail, the proceedings in the trial court. Those proceedings clearly demonstrate that defendant was able to act appropriately in court and interact with his attorney to assist in his own defense. Indeed, defendant had pleaded guilty to an offense and was released mere days before he was arrested for the crime in the present case. In this case, defendant requested a new attorney due to a conflict of interest, which that attorney initially denied, only to later investigate and concede that he was mistaken and defendant was correct.

¶ 59 Defendant participated in a Rule 402 conference, waived his right to a jury trial, and pleaded guilty, each of which required the trial court to admonish defendant to ensure he understood his rights and was voluntarily waiving them. At the guilty plea hearing, the court asked about defendant's mental health, medication, and substance use, and defendant told the court he was fine. And defense counsel stated on the record that defendant had been very polite and cooperative. Last, the medical records attached to defendant's petition demonstrate that he was

interacting with his doctors to manage his medication and treatment.

¶ 60   Accordingly, we conclude that defendant was fit, the record rebutted his claims, and the trial court's dismissal was proper.

¶ 61         III. CONCLUSION

¶ 62   For the reasons stated, we affirm the trial court's judgment.

¶ 63   Affirmed.