# Illinois Official Reports

## Appellate Court

---

### *People v. Brooks*, 2021 IL App (4th) 200573

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NICHOLAS CARLOS BROOKS, Defendant-Appellant. |
| District & No. | Fourth District No. 4-20-0573 |
| Filed Rehearing denied | September 28, 2021 October 19, 2021 |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 09-CF-801; the Hon. Scott D. Drazewski, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | James E. Chadd, Douglas R. Hoff, and Christofer R. Bendik, of State Appellate Defender's Office, of Chicago, for appellant. |
| | Don Knapp, State's Attorney, of Bloomington (Patrick Delfino, David J. Robinson, and Allison Paige Brooks, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

Panel    JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Presiding Justice Knecht and Justice DeArmond concurred in the judgment and opinion.

**OPINION**

¶ 1        In December 2010, a jury found defendant, Nicholas Carlos Brooks, guilty of first degree murder of John Turnpaugh (720 ILCS 5/9-1 (West 2010)), and the trial court later sentenced defendant to 60 years in prison. He appealed, and this court affirmed. *People v. Brooks*, 2012 IL App (4th) 110516-U, ¶ 48.

¶ 2        In August 2013, defendant filed *pro se* a postconviction petition under the Post-Conviction Hearing Act (Act). 725 ILCS 5/122-1 *et seq.* (West 2012). The trial court advanced defendant's petition to the second stage and appointed counsel, as defendant requested. The State filed a motion to dismiss, which the court granted. Defendant appealed, and this court reversed, concluding that postconviction counsel provided defendant unreasonable assistance. We remanded for further second-stage proceedings and the appointment of new counsel. *People v. Brooks*, 2018 IL App (4th) 160010-U, ¶ 19.

¶ 3        On remand in January 2020, defendant's newly appointed counsel filed an amended postconviction petition, alleging that defendant's trial counsel provided ineffective assistance by failing, among other things, to investigate or call Alena Carsell as a witness. The petition alleged (1) Carsell possessed a text message from Junior Snow in which Snow admitted to having killed Turnpaugh and (2) no evidence existed that trial counsel investigated Carsell as a witness.

¶ 4        In August 2020, the State filed a motion to dismiss defendant's postconviction petition, and in October 2020, the trial court granted that motion.

¶ 5        Defendant appeals, arguing that his postconviction petition made a substantial showing that trial counsel provided ineffective assistance when counsel failed to investigate Carsell or call her as a witness. Specifically, defendant alleges that (1) Carsell could have testified and provided Snow's text messages inculpating himself in Turnpaugh's death and (2) no evidence existed to show that trial counsel investigated her as a witness.

¶ 6        We conclude that the trial court erred by dismissing defendant's postconviction petition at the second stage, reverse that dismissal, and remand for third-stage proceedings.

¶ 7                                              I. BACKGROUND
¶ 8                                    A. The Evidence at Defendant's Trial
¶ 9        To put defendant's postconviction claims in context, we will briefly summarize the evidence presented at defendant's trial.

¶ 10        In July 2009, the McLean County Sheriff's Department was informed that John Turnpaugh, a white male, was missing. Later that month, the police discovered Turnpaugh's decomposed body in his mobile home. Turnpaugh's death was caused by multiple injuries involving slash and stab wounds to his body and a penetrating injury to the skull that went through his brain.

¶ 11        Turnpaugh was last seen with defendant, and Turnpaugh's vehicle was located near defendant's sister's residence. The police were able to determine that defendant used Turnpaugh's cell phone to call several of defendant's family members and friends on the morning of July 2, 2009.

¶ 12        In the early morning hours of July 2, 2009, Turnpaugh, defendant, and two other men were "hanging out" at a Bloomington residence when Turnpaugh said he wanted to go back to his trailer where he had some beer. The other two men left and went their own way, while defendant and Turnpaugh went in a different direction in Turnpaugh's van.

¶ 13        Later on July 2, 2009, defendant picked up a woman, Heidi Cummings, from a location near the Salvation Army shelter. Defendant was driving Turnpaugh's van. Defendant showed Cummings a bag that contained a T-shirt, a hammer, and a knife. Defendant told Cummings that the red substance on the items was blood and it got there because he had just killed somebody.

¶ 14        The police recovered surveillance from July 2 depicting defendant picking up Cummings in Turnpaugh's van at 7:56 a.m.

¶ 15        Defendant's brother, Jeremy Fields, testified to also seeing defendant that morning. Fields testified that (1) defendant's T-shirt was covered in blood and (2) he had a bloody hammer. Defendant had a cell phone that he used to make several calls, and defendant told Fields that he had killed someone in a fight.

¶ 16                              B. Defendant's Postconviction Petition

¶ 17        In January 2020, defendant filed an amended postconviction petition, alleging that trial counsel was ineffective for failing to call Carsell because (1) Carsell possessed a text message from Snow in which he admitted to having killed Turnpaugh and (2) no evidence existed that trial counsel investigated her as a witness.

¶ 18        Defendant attached to the petition numerous exhibits, which included an affidavit from an investigator, Nicholas Tripoli. That affidavit contained the following regarding Tripoli's contact with Carsell:

        "I was initially able to contact Ms. Carsell by phone and had a conversation with her regarding her knowledge of [defendant's] case. She indicated that she had received text messages from the actual murderer, Junior Snow, admitting to the crime and that Ms. Carsell had been in possession of those text messages for quite some time after [defendant's] trial. However, Ms. Carsell stopped answering my phone calls[,] and I was unable to obtain an affidavit from her. I have no information as to Ms. Carsell's whereabouts or any other contact information as she refused to give that information to me."

¶ 19        Defendant's affidavit was also submitted in support of his petition, and among other averments in that affidavit, defendant asserted the following:

        "Another thing I told my attorneys before trial was that I had learned that an individual by the name of Alena Carsell had received text messages from the actual murderer, Junior Snow, admitting to the crime and that Ms. Carsell might still be in possession of those text messages.

            *** I personally spoke to Ms. Carsell on the phone in approximately August of 2012 while I was incarcerated in Stateville Correctional Center[,] and Ms. Carsell

corroborated the fact that she had the text messages from Junior Snow on her phone that indicated that Junior Snow was the one who killed Turnpaugh."

¶ 20 In defendant's verified initial postconviction petition, he wrote the following:

"Ms. Carsell would've testified that she was in contact with defense counsel and spoke to the defense investigator about her (Carsell) having a text message on her phone from 'Jr' Snow stating, 'I gave that white boy what he deserved' and that she told the investigator she had no problem with coming in and testifying on behalf of the defense that they (State) had the wrong guy."

¶ 21 In August 2020, the State filed a motion to dismiss defendant's amended postconviction petition. In October 2020, the trial court conducted a hearing on the State's motion and granted it, explaining, in part, the court's reasons for doing so, as follows:

"[T]here is an abundance of case law within the State of Illinois that failure to attach or provide affidavits as required under the Post-Conviction Hearing Act, more specifically 725 ILCS 5/122-2, that failure to attach any such affidavit defeats any post-conviction petition alleging what a witness could or may have testified to because then it's just the defendant's own statements that had this witness been contacted he or she would have testified to this.

This is maybe a little bit different because there is secondhand hearsay, that being we have the affidavit from Mr. Tripoli, the private investigator, that he had a conversation in particular with Miss Carsell. But that is insufficient because it would not be admissible whether it be a third stage proceeding on a post-conviction petition or certainly not at trial as to what any statement or statements that she would have made. Also[,] I'll doubt the argument made by the State which is that that information would not have been admissible at trial due to the fact that there would have been no foundation that could have been laid.

Lastly[,] on that particular issue even if—even if the testimony of Miss Carsell was or would have been provided[,] the other evidence in the case—the other evidence in the case was overwhelming[,] and there would have been no reasonable probability from the court's perspective here that had the jury heard such testimony[,] that the outcome of the trial would have been any different."

¶ 22 This appeal followed.

## II. ANALYSIS

¶ 24 Defendant appeals, arguing that his postconviction petition made a substantial showing that his trial counsel provided ineffective assistance when he failed to investigate Carsell or call her as a witness. Specifically, defendant alleges that (1) Carsell could have testified and provided text messages from Snow inculpating himself in Turnpaugh's death and (2) no evidence existed to show that trial counsel investigated her as a witness.

¶ 25 We conclude that the trial court erred by dismissing defendant's postconviction petition at the second stage, reverse that dismissal, and remand for third-stage proceedings.

### A. The Law Regarding Claims of Ineffective Assistance of Counsel

¶ 27 All defendants enjoy the constitutional right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. "To prevail on a claim of ineffective assistance

of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Pope*, 2020 IL App (4th) 180773, ¶ 61, 157 N.E.3d 1055.

¶ 28    "To establish deficient performance, a defendant must show his counsel's performance fell below an objective standard of reasonableness." *Id.* ¶ 62. It is not sufficient for a defendant to show that counsel's representation was imperfect because the constitution guarantees only a reasonably competent counsel. *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Instead, a defendant must show his counsel's representation undermined the proper functioning of the adversarial process to such an extent that the defendant was denied a fair trial. *Id.* (citing *Strickland*, 466 U.S. at 686).

¶ 29    To show prejudice, a defendant must demonstrate "that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Domagala*, 2013 IL 113688, ¶ 36, 987 N.E.2d 767 (quoting *Strickland*, 466 U.S. at 694). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112. "A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness." *People v. Simpson*, 2015 IL 116512, ¶ 35, 25 N.E.3d 601.

¶ 30                        B. The Law Regarding Postconviction Petitions

¶ 31    "The Act provides a criminal defendant the means to redress substantial violations of his constitutional rights that occurred in his original trial or sentencing." *People v. Fathauer*, 2019 IL App (4th) 180241, ¶ 40, 146 N.E.3d 175; 725 ILCS 5/122-1 (West 2018). "The Act contains a three-stage procedure for relief." *Fathauer*, 2019 IL App (4th) 180241, ¶ 40 (citing *People v. Allen*, 2015 IL 113135, ¶ 21, 32 N.E.3d 615); 725 ILCS 5/122-2.1 (West 2018).

¶ 32    At the second stage, the trial court appoints counsel (if requested by an indigent petitioner), who must then investigate the defendant's claims and make any amendments necessary for an adequate presentation of the defendant's contentions. Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013). The State may file a motion to dismiss the petition, and the petition advances to a third-stage evidentiary hearing only if the defendant makes a "substantial showing of a constitutional violation." *People v. Buffer*, 2019 IL 122327, ¶ 45, 137 N.E.3d 763.

¶ 33    The Illinois Supreme Court has described proceedings at the second stage as follows:

"The second stage of postconviction review tests the legal sufficiency of the petition. Unless the petitioner's allegations are affirmatively refuted by the record, they are taken as true, and the question is whether those allegations establish or 'show' a constitutional violation. In other words, the 'substantial showing' of a constitutional violation that must be made at the second stage [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle petitioner to relief." (Emphasis in original.) *Domagala*, 2013 IL 113688, ¶ 35.

¶ 34    The appellate court reviews a trial court's dismissal of a petition at the second stage *de novo*. *People v. Sanders*, 2016 IL 118123, ¶ 31, 47 N.E.3d 237.

¶ 35　　　　　　　　　C. Applicability of Illinois Rule of Evidence 1101(b)(3)
　　　　　　　　　　　　　　　to Postconviction Proceedings

¶ 36　　　Illinois Rule of Evidence 1101(b)(3) (eff. Apr. 8, 2013) specifically provides that the rules of evidence do not apply to proceedings for "sentencing [and] postconviction hearings." However, that rule applies differently at the second stage of postconviction proceedings than it does at the third stage.

¶ 37　　　　　　　　　1. *Applicability of Illinois Rule of Evidence 1101(b)(3)*
　　　　　　　　　　*to Second-Stage Postconviction Proceedings*

¶ 38　　　In *People v. Robinson*, 2020 IL 123849, ¶ 45, the Supreme Court of Illinois recently discussed the pleading stages of postconviction proceedings, which includes second-stage proceedings, as follows:

　　　"At the pleading stage of postconviction proceedings, all well-pleaded allegations in the petition and supporting affidavits that are not positively rebutted by the trial record are to be taken as true. [Citations.] In deciding the legal sufficiency of a postconviction petition, the court is precluded from making factual and credibility determinations."

¶ 39　　　In *Robinson*, the trial court denied the defendant leave to file a successive postconviction petition, and the appellate court affirmed that denial, concluding that the defendant failed to raise a colorable claim of actual innocence because his proffered affidavits were not of such a conclusive nature as to probably change the result of the case on retrial. *Id.* ¶¶ 30-33.

¶ 40　　　In *Robinson*, as in the present case, one of the items at issue was one person's alleged confession that was set forth in another person's affidavit. *Id.* ¶ 80. The State contended in *Robinson* that the alleged confession was not sufficiently reliable and trustworthy to be admissible under the criteria set forth by the United States Supreme Court in *Chambers v. Mississippi*, 410 U.S. 284, 300-01 (1973). *Robinson*, 2020 IL 123849, ¶ 81. In *Chambers*, the Court set forth four factors that are relevant in determining whether sufficient indicia of trustworthiness are present to admit an extra-judicial confession. *Id.* (citing *Chambers*, 410 U.S. at 300-01). However, in *Robinson*, the Illinois Supreme Court deemed the State's contentions premature regarding the reliability of the *Chambers* statement at issue, noting that in *Sanders*, 2016 IL 118123, ¶¶ 33, 42, the supreme court held "that credibility determinations are made at a third-stage evidentiary hearing," not at the second stage. *Robinson*, 2020 IL 123849, ¶ 81.

¶ 41　　　Regarding the applicability of Rule 1101(b)(3) to second-stage proceedings, the *Robinson* court approvingly cited *People v. Velasco*, 2018 IL App (1st) 161683, ¶¶ 119, 123, 127 N.E.3d 53, in which the First District took as true, pursuant to Rule 1101(b)(3), hearsay allegations that another gang member bragged to the affiant about committing the murder at issue in that case; accordingly, the First District in *Velasco* advanced the actual innocence petition to the third stage. *Id.* ¶ 78. In doing so, the *Velasco* court (1) discussed how Rule 1101(b)(3) applied to postconviction proceedings and (2) noted that Rule 1101(b)(3) "does not specify that the rules of evidence are inapplicable only during second-stage hearings, or only during third-stage hearings. Instead, Rule 1101(b)(3) provides that the rules of evidence are inapplicable to 'postconviction hearings' generally and makes no distinction between second and third-stage hearings." *Id.* ¶ 116.

¶ 42    The *Velasco* court further discussed how hearsay evidence should be treated at the second stage and the third stage of postconviction proceedings, writing as follows:

> "[H]earsay evidence may be treated differently at the second stage than at the third stage. At the second stage, the well-pleaded facts in the petition and accompanying affidavits, including any affidavits containing hearsay, which do not conflict with the record, are taken as true when determining whether a defendant has made a substantial showing of his innocence so as to advance the petition to a third-stage evidentiary hearing; no credibility determinations are made." *Id.* ¶ 117.

¶ 43    In June 2020, shortly before the supreme court rendered its decision in *Robinson*, 2020 IL 123849, First District Appellate Court Justice David Ellis wrote a lengthy dissent in *People v. Simms*, 2020 IL App (1st) 161067, ¶¶ 52-77, that expanded upon the First District's *Velasco* analysis regarding the admissibility of evidence at second- and third-stage postconviction hearings. (We note that the supreme court subsequently entered a supervisory order directing the First District to vacate its judgment in *Simms* and to consider *Robinson* on remand to see if *Robinson* would affect the First District's decision in *Simms*. *People v. Simms*, No. 126080 (Ill. Sept. 30, 2020) (supervisory order). The First District later vacated that decision and—following Justice Ellis's analysis—reversed the trial court's denial of the defendant's motion for leave to file successive postconviction petitions. See *People v. Simms*, 2021 IL App (1st) 161067-B, ¶¶ 35-38.

¶ 44    Although the issue in *Simms* was how the courts should evaluate a claim of actual innocence at the leave-to-file stage of a successive postconviction petition (*Simms*, 2020 IL App (1st) 161067, ¶ 18), we believe Justice Ellis's analysis applies to the issue before this court regarding the second-stage dismissal of defendant's postconviction petition. Justice Ellis wrote the following in his *Simms* dissent:

> "What does it mean to take an affidavit *as true*? Do we merely assume that the affiant would testify consistently with the affidavit at a new trial? Or must we assume that a reasonable juror, hearing the affiant's testimony at a new trial, would *believe* it—which is just to say, take it as true?
>
> On the majority's approach, we simply assume that the affiant would testify at a new trial as he did in his affidavit. We then weigh that new evidence (of innocence) against the contrary evidence (of guilt) presented at the original trial and decide which evidence a reasonable juror would likely believe. Weighing the evidence here, the majority finds that the evidence of guilt offered at trial was 'overwhelming,' and thus the new evidence presented in Niles's affidavit [(the affidavit at issue)] probably would not have changed the verdict. It is in *this* sense that the majority says Niles's affidavit is not 'conclusive.'
>
> *** [T]his procedure of weighing the evidence is inappropriate at the initial stage of a postconviction proceeding. ***
> ***
>
> At this initial stage, we are required to accept '[a]ll well-pleaded factual allegations'—including those set forth in Niles's affidavit—as true. *People v. Sanders*, 2016 IL 118123, ¶ 42[, 47 N.E.3d 237]. If taking Niles's affidavit testimony *as true* means anything at all, it must mean that a juror, hearing from Niles at a hypothetical retrial, would *believe* his testimony. (To 'believe' just means 'to accept something as

true, genuine, or real.' Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/believe (last visited June 3, 2019)). *** We then ask whether it is more likely than not that no reasonable juror, hearing *and believing* this evidence, alongside all the other evidence presented at trial, could convict defendant." (Emphases in original.) *Simms*, 2020 IL App (1st) 161067, ¶¶ 53-57 (Ellis, J., dissenting).

¶ 45    We have quoted Justice Ellis's analysis in *Simms* and the First District's analysis in *Velasco* because it seems to us that these analyses reflect what the supreme court later said in *Robinson*.

¶ 46    *2. Applicability of Illinois Rule of Evidence 1101(b)(3) to*
*Third-Stage Postconviction Proceedings*

¶ 47    At the third stage, a defendant has the burden of proving a substantial constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 473, 861 N.E.2d 999, 1008 (2006). The "court must determine whether the evidence introduced demonstrates that the petitioner is, in fact, entitled to relief." *Domagala*, 2013 IL 113688, ¶ 34. At a third-stage hearing, "the trial court acts as a fact-finder, making credibility determinations and weighing the evidence. [Citation.] Accordingly, we review the court's decision to deny relief for manifest error." *People v. Reed*, 2020 IL 124940, ¶ 51. "Manifest error is 'clearly evident, plain, and indisputable.' [*People v. Morgan*, 212 Ill. 2d 148, 155, 817 N.E.2d 524, 528 (2004).] Thus, a decision is manifestly erroneous when the opposite conclusion is clearly evident." *People v. Coleman*, 2013 IL 113307, ¶ 98, 996 N.E.2d 617.

¶ 48    Reviewing courts apply the manifestly erroneous standard in recognition of "the understanding that the postconviction trial judge is able to observe and hear the witnesses at the evidentiary hearing and, therefore, occupies a position of advantage in a search for the truth which is infinitely superior to that of a tribunal where the sole guide is the printed record." (Internal quotation marks omitted.) *People v. Coleman*, 183 Ill. 2d 366, 384, 701 N.E.2d 1063, 1073 (1998).

¶ 49    In *Velasco*, the First District also discussed how Rule of Evidence 1101(b)(3) affects third-stage postconviction proceedings and wrote the following:

"By contrast [with a second-stage hearing], if a petition advances to a third-stage evidentiary hearing, a defendant will no longer enjoy[ ] the presumption that the allegations in his petition and accompanying affidavits are true. [Citation.] Instead, as to a claim of actual innocence, the postconviction court at the third stage is to decide the weight to be given the testimony and evidence, make credibility determinations, and resolve any evidentiary conflicts. [Citation.] In determining the weight to be given the new evidence and whether all the evidence, new and old, is so conclusive that it is more likely than not that no reasonable juror would find defendant guilty beyond a reasonable doubt on retrial, the court at the third stage must necessarily consider whether the new evidence would ultimately be admissible at a retrial. Thus, in this case, at the third stage, the hearsay affidavits [at issue] would be subjected to credibility, reliability, and weight-testing, and the court in making its determination would consider the possibility of their admissibility at a new trial." (Internal quotation marks omitted.) *Velasco*, 2018 IL App (1st) 161683, ¶ 118.

¶ 50    In *People v. Wilson*, 2019 IL App (1st) 181486, ¶ 1, 158 N.E.3d 1067, at issue was evidence being offered at an evidentiary hearing under the Illinois Torture Inquiry and Relief

Commission Act (Torture Act) (775 ILCS 40/1 *et seq.* (West 2010)). In *Wilson*, the First District noted that "[a]n evidentiary hearing under the Torture Act has been likened to a third-stage evidentiary hearing under the Post-Conviction Hearing Act" (*Wilson*, 2019 IL App (1st) 181486, ¶ 51), and then wrote the following:

> "The trial court's evidentiary rulings, which involved the court's oversight of the courtroom and maintenance of a case's progress, will not be reversed absent an abuse of discretion. [Citation.] *** Additionally, a trial court may reject offered evidence on grounds of irrelevancy if it has little probative value due to its remoteness, uncertainty, or possibly unfair prejudicial nature." (Internal quotation marks omitted.) *Id.* ¶ 58.

¶ 51    We agree and conclude that the above-quoted analysis in *Wilson* fully applies to third-stage postconviction hearings, including a trial court's "oversight of the courtroom and maintenance of a case's progress." *Id.*

¶ 52    As we earlier noted, Rule 1101(b)(3) uses the same language in reference to postconviction hearings and sentencing hearings—namely, that the Illinois Rules of Evidence do not apply to either of those hearings. Thus, when determining what evidence is admissible at a third-stage evidentiary hearing and how the trial court should evaluate that evidence, the rules governing how trial courts have handled such questions at sentencing hearings can be helpful. For instance, in *People v. Varghese*, 391 Ill. App. 3d 866, 873, 909 N.E.2d 939, 945 (2009), the Second District wrote that (1) the ordinary rules of evidence are relaxed during sentencing hearings and (2) evidence may be admitted if it is both relevant and reliable. Indeed, "[t]he source and type of admissible information is virtually without limits." *Id.*

¶ 53    In *People v. Gibson*, 2018 IL App (1st) 162177, ¶ 139, 105 N.E.3d 47, Justice Ellis also wrote about the similarity between sentencing hearings and third-stage hearings, as follows:

> "There are many *** types of hearings at which the general prohibition against hearsay does not apply. See Ill. R. Evid. 1101(b)(3) (eff. Apr. 8, 2013). For example, sentencing hearings have long been exempt from the rules of evidence—in lowercase, since the exemption predates not only the 2013 amendment but the original codification of the Rules. [Citations.] We have always left it to the sound discretion of the trial court to determine whether hearsay is reliable enough to weigh in sentencing. [Citation.] If the trial court finds hearsay evidence relevant and reliable, the fact that it is hearsay affects its weight, rather than its admissibility." (Internal quotation marks omitted.)

¶ 54    Similarly, in *People v. Cunningham*, 2018 IL App (4th) 150395, ¶ 31, 115 N.E.3d 423, this court wrote, " '[H]earsay testimony is not *per se* inadmissible at a sentencing hearing as unreliable or as denying a defendant's right to confront accusers.' " *Id.* (quoting *People v. Foster*, 119 Ill. 2d 69, 98, 518 N.E.2d 82, 94 (1987)). This court also wrote that an objection to such evidence goes to the weight of the evidence and not its admissibility. *Id.* Further, double hearsay is generally admissible if at least some parts of it have been corroborated by other evidence. *Id.* In addition, uncorroborated hearsay is not inherently unreliable, particularly when (1) the information was compiled during an official investigation or (2) the evidence was never directly challenged. *Id.*

¶ 55    We believe the same rules regarding the admissibility of evidence at sentencing hearings should apply to the admissibility of evidence at third-stage postconviction hearings. That means, for instance, that hearsay evidence—like the alleged statement by a third party to other persons that the third party actually committed the murder for which the defendant was convicted (as in the present case and in *Robinson*)—is not *per se* inadmissible because it fails

to meet the reliability criteria that would be required for admissibility at trial. However, the trial court, as trier of fact at the third-stage postconviction evidentiary hearing, would be entirely free, after having admitted such hearsay evidence, to conclude that, in the court's judgment, the admitted evidence is not worth very much.

¶ 56 Given that the trial court is serving as trier of fact, as opposed to a jury, an even stronger argument exists to reduce the threshold for the admissibility of evidence at third-stage hearings. The court may *admit* the evidence in question and then mostly—or perhaps even entirely—disregard it, deeming it unreliable or simply not believable. And in making that determination, the trial court is free to consider all of the other evidence presented at the third-stage proceeding, including all of the evidence that was originally presented at the defendant's trial at which he was convicted.

¶ 57 Last, we note that Gino L. DiVito, a former justice on the First District Appellate Court and a distinguished expert on Illinois evidence law who also served as a member of the Special Supreme Court Committee on Illinois Evidence, has done the Illinois judiciary and bar a great service by providing an analysis of the Illinois Rules of Evidence. In his publication on that subject, revised January 1, 2017, Justice DiVito analyzes Rule 1101(b)(3), writing as follows:

> "The addition of 'postconviction hearings' in IRE 1101(b)(3), eff. Apr. 8, 2013, occurred to assure consistency with section 122-6 of the Code of Criminal Procedure of 1963 (725 ILCS 5/122-6), a section of article 122, which is the Post-Conviction [Hearing] Act. The relevant portion of section 122-6 reads: 'The court may receive proof by affidavits, depositions, oral testimony, or other evidence.' Thus, that section *grants discretion* to the trial court to accept in Post-Conviction Act hearings, testimony that does not comply with the codified rules of evidence." (Emphasis added.) Gino L. DiVito, The Illinois Rules of Evidence: A Color-Coded Guide 230 (2017).

¶ 58 We agree with Justice DiVito's assessment and note that his analysis further informs the trial courts that they have discretion to accept testimony that does not comply with the codified rules of evidence. In our opinion, part of a trial court's discretion at a third-stage evidentiary hearing includes the authority to *admit* questionable evidence and then to *disregard* it because, in the court's judgment, it is unreliable.

¶ 59                                                    D. This Case

¶ 60 In this case, the trial court dismissed defendant's petition at the second stage because the court did not believe that the evidence—namely, the text message in which Snow supposedly implicated himself in Turnpaugh's death—was admissible. Defendant argues that such an evidentiary determination at the second stage was inappropriate, and we agree.

¶ 61 As we explained earlier, the rules of evidence simply do not apply to the second stage of postconviction proceedings. Therefore, any disagreement about the admissibility of the text message should have been reserved for the third-stage evidentiary hearing. Following the admission of the test message at the evidentiary hearing, the trial court then could determine whether it could be admissible at retrial. If the trial court determined that the text message would not be admissible, then the court could determine that the text message should be given no weight.

¶ 62 On the other hand, it is possible that Carsell could testify at the evidentiary hearing, lay a sufficient foundation to admit the text message, and provide the relevant context to assess the

inculpatory statement under *Chambers*. It is possible that the trial court could find Carsell, and Snow's text message, very persuasive and credible. And it is possible then that the postconviction petition *could* be granted. Such is the point of an evidentiary hearing at which live testimony can be presented and credibility determinations can be made.

¶ 63                                    III. CONCLUSION

¶ 64        For the reasons stated, we reverse the trial court's dismissal of defendant's postconviction petition at the second stage and remand for third-stage proceedings.

¶ 65        Reversed and remanded with directions.