NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 200632-U

NO. 4-20-0632

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 22, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Vermilion County |
| MELVIN J. TURNER, | ) | No. 12CF596 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Derek J. Girton, |
| | ) | Judge Presiding. |

_____

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Turner and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court reversed the trial court's second-stage dismissal of
defendant's postconviction petition because defendant's claim of actual innocence
was arguably meritorious.

¶ 2    In July 2013, a jury found defendant, Melvin J. Turner, guilty of (1) home
invasion (720 ILCS 5/12-11(a)(2) (West 2010)) (renumbered as 720 ILCS 5/19-6 by Pub. Act
97-1108, art. 10, § 10-5 (eff. Jan. 1, 2013)) (count II), (2) armed robbery (720 ILCS 5/18-2(a)(2)
(West 2010)) (count III), and (3) criminal trespass to a residence (720 ILCS 5/19-4(a)(2) (West
2010)) (count V). The trial court later sentenced defendant to 25 years in prison.

¶ 3    In April 2017, defendant *pro se* filed a petition for postconviction relief pursuant
to the Post-Conviction Hearing Act (Act). 725 ILCS 5/122-1 *et seq*. (West 2016). In November
2017, the trial court advanced the petition to the second stage and appointed counsel for
defendant.

¶ 4 In September 2020, defendant filed a second amended postconviction petition in which he argued (1) trial counsel provided ineffective assistance (a) by failing to investigate and present an alibi defense and (b) by laboring under a conflict of interest, (2) his due process rights were violated when the State knowingly used perjured testimony to secure his conviction, (3) appellate counsel provided ineffective assistance by failing to raise the ineffective-assistance claims related to trial counsel on direct appeal, and (4) defendant is actually innocent as shown by an affidavit from a victim, Bryson Newsome.

¶ 5 Following a hearing in November 2020, the trial court granted the State's motion to dismiss defendant's petition.

¶ 6 Defendant appeals, arguing the trial court erred by dismissing his petition because he made a substantial showing he was denied due process by (1) the knowing use of perjured testimony and (2) asserting a claim of actual innocence based on the newly discovered evidence of Newsome's affidavit recanting his trial testimony. Accordingly, defendant argues he is entitled to a third-stage evidentiary hearing.

¶ 7 Alternatively, defendant argues he was denied the reasonable assistance of postconviction counsel in violation of Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013). Defendant asserts counsel filed an amended postconviction petition alleging the ineffective assistance of trial counsel but failed to attach affidavits or evidentiary support for these claims and failed to explain the absence of such evidence.

¶ 8 We conclude the trial court erred by dismissing defendant's postconviction petition at the second stage, reverse that dismissal, and remand for third-stage proceedings.

¶ 9 I. BACKGROUND

¶ 10 A. The State's Charges

¶ 11         The State initially charged defendant with five criminal counts, alleging that in December 2012, defendant knowingly and without authority entered a residence armed with a handgun and took money and property located therein. Prior to defendant's July 2013 jury trial, the State informed the trial court that it was proceeding on the following three counts: (1) home invasion (count II), (2) armed robbery (count III), and (3) criminal trespass to a residence (count V).

¶ 12         B. The Evidence Presented at Defendant's Jury Trial

¶ 13         To put defendant's postconviction clams in context, we briefly summarize the evidence presented at defendant's trial.

¶ 14         Evony Jackson testified that on the evening of December 2, 2012, she was at home with her boyfriend, Bryson Newsome, and their three-year-old daughter. Jackson was in her bedroom. She dressed her daughter for bed, and while Jackson studied for a nursing exam, her daughter fell asleep. Between 9 and 10 p.m., Jackson heard a knock at the door. Jackson saw Newsome, who was in the living room, walk towards the door. Thereafter, Jackson heard more than one voice order, "Get on the ground. Get on the ground." At that moment, Jackson got up and saw several men. Jackson immediately locked her bedroom door and called 9-1-1. While on the phone, Jackson opened the bedroom door and saw one of the intruders enter her daughter's bedroom. As that man exited, Jackson saw his face but she "wasn't trying to look at extreme specific details." Jackson testified she did not want to endanger her daughter. The intruders left abruptly after realizing that Jackson had called the police.

¶ 15         After the police arrived, Jackson told the officers that she could not identify any of the intruders. Later that evening, Newsome told Jackson that he recognized one of the intruders as defendant. Jackson immediately recalled it was defendant she saw exiting her

daughter's bedroom, noting she and defendant had attended the same middle school and high school. Jackson testified she was 100% certain the individual who entered her daughter's bedroom on the evening of December 2, 2012, was defendant.

¶ 16        On cross-examination, Jackson admitted she did not immediately identify defendant as the individual who entered her home on December 2, 2012. Jackson testified that while in the nursing program, she could not get into trouble with the law. She believed if she identified defendant, she might get into trouble.

¶ 17        Bryson Newsome testified that on the evening of December 2, 2012, he was at Jackson's home when he heard a knock on the back door. Newsome approached the door, opened the blinds covering the window, and saw defendant—whom Newsome knew—accompanied by another man who had his back to the window. Because Newsome knew defendant, he unlocked the door. As Newsome "cracked" the door open, defendant pushed the door, and the other man struck Newsome in his left eye with a gun. The unknown intruder took at least $300 from Newsome's pocket and threw him to the ground. While on the ground, Newsome saw three men. Defendant told the person standing over Newsome to "[k]eep the .40 on him." Newsome then heard defendant say, "[Newsome's] girlfriend is in the bedroom calling the police. Let's go." Newsome observed that in addition to the money, the intruders also took an electronic gaming system and a laptop computer.

¶ 18        Newsome explained that he had known defendant for about 10 years, noting they were former classmates, though not friends. Earlier in the day, Newsome saw defendant at a local gas station. Newsome agreed to give defendant a ride but stopped en route to buy cannabis. Newsome realized that defendant saw the cash he possessed when he purchased cannabis.

¶ 19    Newsome testified he viewed photographs with a detective in an effort to identify the three individuals who broke into Jackson's home. Newsome testified he "almost picked" several of the individuals in the "photo lineup" but did not because he was not 100% sure they were the individuals who broke into Jackson's home, but Newsome testified he was 100% sure when he identified defendant as one of the intruders.

¶ 20    Defendant did not present any evidence.

¶ 21    Following argument, the jury convicted defendant on all three counts.

¶ 22                        C. The Postconviction Proceedings

¶ 23    In April 2017, defendant *pro se* filed a petition for postconviction relief pursuant to the Act. 725 ILCS 5/122-1 (West 2016). In November 2017, the trial court advanced the petition to the second stage and appointed counsel for defendant.

¶ 24    In September 2020, defendant filed a second amended postconviction petition in which he argued (1) trial counsel provided ineffective assistance by (a) failing to investigate and present an alibi defense and (b) laboring under a conflict of interest, (2) his due process rights were violated when the State knowingly used perjured testimony to secure his conviction, (3) appellate counsel provided ineffective assistance by failing to raise the ineffective-assistance claims related to trial counsel on direct appeal, and (4) defendant is actually innocent as shown by an affidavit from Newsome.

¶ 25    Defendant attached to the petition an affidavit written by Bryson Newsome, which stated the following:

> "On July 9th 2013, I was coerced by then State's Attorney Mr. Mockbee
>
> to testify under oath against [defendant] for the alleged Criminal Charges of

Home Invasion and Armed Robbery that happened at my then girlfriends Evony Jackson's house on December 2nd 2012.

Before the jury trial began I expressed to Mr. Mockbee that although I made a statement to Detective Hartshorn that [defendant] was the person I thought entered the house along with 2 other people, that I was not a 100% sure because I had been smoking weed and drinking liquor all that day even minutes before the knock on the door that led to my attack. He, Mr. Mockabee, then explained to me that he needed to get this conviction so that we could set an example for those who choose to live the street life and even stated that due to [defendant's] background it would be an easy conviction because Mr. Mockbee would attack his criminal past. With that information I agreed to testify against [defendant] and even convinced my then girlfriend Evony Jackson to also testify against him to help secure the conviction.

After the trial I learned that [defendant] was found guilty on all charges and sentenced to 25 years.

After years of dealing with my decision I felt that the truth needed to be known so I reached out to [defendant] and his family seeking forgiveness for my false testimony that lead [*sic*] to the conviction of [defendant], who I later found out not to be the person to victimize me and my family.

I understand I should [have] been honest from the begin[n]ing while testifying under oath because now the wrong person is sitting in prison due to my testimony."

¶ 26 Following a hearing in November 2020, the trial court granted the State's motion to dismiss defendant's petition. The court noted Newsome's affidavit stated he "later found out" defendant was not "the person who victimized [Newsome] and [his] family," but Newsome did not "explain how he found that out, who he found that out from, what information he found."

¶ 27 This appeal followed.

¶ 28 II. ANALYSIS

¶ 29 Defendant appeals, arguing the trial court erred by dismissing his petition because he made a substantial showing he was denied due process by (1) the knowing use of perjured testimony and (2) asserting a claim of actual innocence based on newly discovered evidence of Newsome's affidavit recanting his testimony at trial. Thus, defendant argues he is entitled to a third-stage evidentiary hearing. Alternatively, defendant argues he was denied reasonable assistance of postconviction counsel in violation of Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013). Defendant asserts counsel filed an amended postconviction petition alleging the ineffective assistance of trial counsel but failed to attach affidavits or evidentiary support for these claims and failed to explain the absence of such evidence.

¶ 30 Based upon the Illinois Supreme Court's decision in *People v. Robinson*, 2020 IL 123849, we conclude that defendant has made a sufficient showing that he is entitled to a third-stage evidentiary hearing.

¶ 31 A. The Law Regarding Postconviction Petitions

¶ 32 "The Act provides a statutory remedy to criminal defendants who assert claims for substantial violations of their constitutional rights at trial." *Id.* ¶ 42. "The Act contains a three-stage procedure for relief." *People v. Fathauer*, 2019 IL App (4th) 180241, ¶ 40, 146

N.E.3d 175 (citing *People v. Allen*, 2015 IL 113135, ¶ 21, 32 N.E.3d 615); 725 ILCS 5/122-2.1 (West 2018).

¶ 33        "At the second stage, the trial court appoints counsel (if requested by an indigent petitioner), who must then investigate the defendant's claims and make any amendments necessary for an adequate presentation of the defendant's contentions." *People v. Brooks*, 2021 IL App (4th) 200573, ¶ 32 (citing Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013)). "The State may file a motion to dismiss the petition, and the petition advances to a third-stage evidentiary hearing only if the defendant makes a 'substantial showing of a constitutional violation.' " *Id.* ¶ 32 (quoting *People v. Buffer*, 2019 IL 122327, ¶ 45, 137 N.E.3d 763).

¶ 34        The Illinois Supreme Court has described proceedings at the second stage as follows:

> "The second stage of postconviction review tests the legal sufficiency of the petition. Unless the petitioner's allegations are affirmatively refuted by the record, they are taken as true, and the question is whether those allegations establish or 'show' a constitutional violation. In other words, the 'substantial showing' of a constitutional violation that must be made at the second stage [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle petitioner to relief." (Emphasis in original.) *People v. Domagala*, 2013 IL 113688, ¶ 35, 987 N.E.2d 767.

"Credibility determinations may be made only at a third-stage evidentiary hearing." *People v. Sanders*, 2016 IL 118123, ¶ 42, 47 N.E.3d 237.

¶ 35        In *Robinson*, the supreme court clarified that evidence is not "positively rebutted simply because it was contradicted by the evidence at trial." *Robinson*, 2020 IL 123849, ¶ 60. "For new evidence to be positively rebutted, it must be clear from the trial court record that no fact finder could ever accept the truth of that evidence, such as where it is affirmatively and incontestably demonstrated to be false or impossible." *Id.*

¶ 36        The appellate court *de novo* reviews a trial court's dismissal of a petition at the second stage. *Brooks*, 2021 IL App (4th) 200573, ¶ 34.

¶ 37                    B. The Law Regarding Claims of Actual Innocence

¶ 38        The supreme court explained the standard for actual innocence claims in *Robinson* and wrote the following:

> "To establish a claim of actual innocence, the supporting evidence must be
> (1) newly discovered, (2) material and not cumulative, and (3) of such a
> conclusive character that it would probably change the result on retrial.
> [Citations.] Newly discovered evidence is evidence that was discovered after trial
> and that the petitioner could not have discovered earlier through the exercise of
> due diligence. [Citation.] Evidence is material if it is relevant and probative of the
> petitioner's innocence. [Citation.] Noncumulative evidence adds to the
> information that the fact finder heard at trial. [Citation.] Lastly, the conclusive
> character element refers to evidence that, when considered along with the trial
> evidence, would probably lead to a different result. [Citation.] The conclusive
> character of the new evidence is the most important element of an actual
> innocence claim. [Citation.]

Ultimately, the question is whether the evidence supporting the postconviction petition places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt. [Citation.] The new evidence need not be entirely dipositive to be likely to alter the result on retrial. [Citation.] Probability, rather than certainty, is the key in considering whether the fact finder would reach a different result after considering the prior evidence along with the new evidence. [Citation.]" *Robinson*, 2020 IL 123849, ¶¶ 47-48.

¶ 39                                        C. This Case

¶ 40          In this case, Newsome came forward "after years of dealing with [his] decision" to provide false testimony at trial. Newsome explained he had approached the assistant state's attorney and expressed doubt in his identification of defendant as one of the three individuals who entered Jackson's home on December 2, 2012. Newsome stated he "later found out" defendant was not the person involved in the armed robbery. According to his affidavit, Newsome told the assistant state's attorney he was not "100% sure" of his identification of defendant. The assistant state's attorney "coerced" Newsome to testify against defendant despite his doubt. And after that, Newsome convinced his then girlfriend Jackson to identify defendant as the perpetrator.

¶ 41          This evidence is clearly newly discovered because Newsome's knowledge and the information contained in his affidavit were discovered long after the trial. The evidence is material and not cumulative because it is related to the identity of the perpetrator and adds to the information the jury heard at trial.

¶ 42          Finally, this evidence, if it were believed by a jury, is of a conclusive character. At trial, the only evidence presented tying defendant to the home invasion and armed robbery

was the identification testimony provided by Newsome and Jackson. If we believe Newsome's affidavit, as we are obligated to do at the second stage when the affidavit is not rebutted by the record, Newsome offered false testimony concerning his identification of defendant as the individual knocking at Jackson's back door and falsely named defendant as the intruder in response to questioning by police officers immediately after the incident. Further, Newsome falsely identified defendant as the intruder first when Newsome was interviewed by Detective Hartshorn and, then again, when Detective Hartshorn showed Newsome the photo arrays nine days after the home invasion and armed robbery.

¶ 43        Although Jackson also identified defendant, she admitted she identified defendant only after Newsome named defendant as one of the individuals who entered Jackson's home. Jackson testified she realized from her association with defendant in middle and high school that it was defendant whom she observed leaving her daughter's bedroom. In his affidavit, Newsome states he "convinced" Jackson to testify against defendant. Although both Newsome and Jackson affirmed they were 100% certain defendant was the perpetrator at trial, this new information, taken as true, undermines the certainty of that identification.

¶ 44        No matter how incredulous we may be, it is the duty of the court to take those claims not *affirmatively* rebutted by the record as true. See *Robinson*, 2020 IL 123849, ¶ 60. It is not until the third-stage evidentiary hearing, where Newsome may testify to the contents of his affidavit and other evidence may be presented, that the trial court can make a determination regarding the credibility of Newsome's claims. It is *possible* Newsome could thoroughly explain the new information he learned exonerating defendant. It is *possible* the trial court could find Newsome's testimony very persuasive and credible. And it is *possible* then that the postconviction petition could be granted. As this court has stated, "Such is the point of an

evidentiary hearing at which live testimony can be presented and credibility determinations can be made." *Brooks*, 2021 IL App (4th) 200573, ¶ 62.

¶ 45　　　　Although we make no judgment at all regarding the ultimate merits of defendant's claims, we conclude that this matter must advance to a third-stage evidentiary hearing. Because defendant's claim as to the knowing use of perjured testimony by the State is intrinsically connected to his claim of actual innocence, that claim must also advance to a third-stage evidentiary hearing. Because we are remanding for a third-stage evidentiary hearing, we need not consider defendant's alternative argument that he was denied the reasonable assistance of postconviction counsel. On remand, defendant may present evidence addressing his ineffective assistance of trial counsel claims.

¶ 46　　　　　　　　　　　　III. CONCLUSION

¶ 47　　　　For the reasons stated, we reverse the trial court's dismissal of defendant's postconviction petition at the second stage and remand for third-stage proceedings.

¶ 48　　　　Reversed and remanded with directions.