NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230712-U

NO. 4-23-0712

IN THE APPELLATE COURT

FILED
October 2, 2024
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| CHARLES DAVIS, | ) | No. 22CF2985 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Randy R. Wilt, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Justices Lannerd and DeArmond concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court affirmed, finding (1) defendant waived the arguments
contained in his motion for a new trial when he withdrew the motion pursuant to a
sentencing agreement and (2) defense counsel did not provide ineffective
assistance.

¶ 2       Defendant, Charles Davis, was charged with aggravated domestic battery (720

ILCS 5/12-3.2 (West 2022)) and aggravated battery (*Id.* § 3.05(d)(2)) for allegedly strangling his

pregnant girlfriend, Nakyia Blaylock. At trial, pursuant to a motion from the State and over

defense counsel's objection, hearsay evidence from Blaylock was admitted under the forfeiture

by wrongdoing doctrine. The jury found defendant guilty of aggravated battery. Defendant filed

a motion for a new trial, but he later withdrew that motion as part of a sentencing agreement with

the State. After being sentenced pursuant to his agreement with the State, defendant asked for

leave *instanter* to appeal.

¶ 3        On appeal, defendant argues the trial court erred in granting the State's motion admitting Blaylock's out-of-court statements where the State failed to establish (1) it made reasonable efforts to secure her availability and (2) defendant's conduct procured her unavailability.

¶ 4        We affirm.

¶ 5                                  I. BACKGROUND

¶ 6        On December 19, 2022, defendant was charged with aggravated domestic battery and aggravated battery for an incident that occurred on December 7, 2022, between him and his girlfriend, Nakyia Blaylock. Blaylock was interviewed at the time of the incident by Kyle Haugh, a patrol officer with the City of Rockford Police Department. Blaylock told Haugh that, following a disagreement, defendant choked her for 20 to 30 minutes, impeding her normal breathing. She showed Haugh marks on her neck and scratches on her face from defendant. She confirmed defendant was the father of the twins she was three months pregnant with at the time. She answered affirmatively when asked if defendant ever threatened to kill her or her children, and if she believed he would try to in the future. She also expressed a desire for him to be arrested. Her statements were captured on Haugh's body-worn camera (BWC).

¶ 7        Defendant turned himself in to police on January 23, 2023. Prior to trial, the State filed a motion for the admission of hearsay statements pursuant to forfeiture by wrongdoing, in which it alleged defendant, through phone calls and text messages from jail with Blaylock and others, attempted to procure Blaylock's unavailability for trial. At a hearing on the motion, the State said it attempted to serve Blaylock with a subpoena to testify at trial but was unsuccessful. The investigator who attempted to locate her was unavailable to testify at the hearing, but the State proffered that he had sent an e-mail stating he was unable to locate Blaylock because she

was not "answering calls or cards that were left." No further information was provided as to the investigator's methods or efforts to locate her.

¶ 8 The State also presented testimony from three witnesses. The first witness, Teresa Fox, a victim service provider with the state's attorney's office, testified she received an affidavit from Blaylock in January 2023, in which Blaylock stated she wished to drop the charges against defendant and that she had lied about him touching her. Fox also received two phone calls from Blaylock. In the first, made in January 2023, Blaylock told her that she "needed [defendant] home, that they were having twins, and she wanted him to, she wanted him to be with her." In the second call, made in April 2023, Blaylock stated she would not come to court, had moved on, and was living with her mother out of state. She would not tell Fox which state.

¶ 9 The State's second witness, Jane Dickinson, another victim service provider for the state's attorney's office, testified to a phone call with Blaylock in which Blaylock told her she had not been subpoenaed and would not be coming to court for the case.

¶ 10 The State's final witness, Haley Smith, testified to reviewing defendant's inmate calls and tablet messages as part of her role with the Winnebago County State's Attorney's Office. Certain phone calls placed by defendant while in jail were then played for the trial court. In the first call, defendant is heard telling a third party that he "had [his] cousin reach out to her, and she agreed to talk to PD or whoever and say she don't want to press charges." In a second call, placed the same day, defendant speaks to a woman who appears to be Blaylock to confirm she wrote the aforementioned affidavit, asking her, "you don't want to comply or move forward?" Later that day, in another call to Blaylock, defendant tells her to "do what my cousin said and don't answer the phone if they call."

¶ 11 Smith also testified about text messages sent by defendant while in jail. In one, defendant messages a contact with the name "Miamor Davis" and says, "Ight tell monesha to call downtown again tomorrow to let them know she doesn't want me to go to prison she just had our kids and she not coming to trial the attorney name ms palmer." Smith believed Miamor Davis was Blaylock based on defendant referring to her as "Kyia" at one point, a shortened version of Blaylock's first name, and the fact that the parties initially spoke in first person and only later began referring to Blaylock in the third person.

¶ 12 In response to the State's evidence, defense counsel argued the State had not proven Blaylock's unavailability. In particular, the defense noted that no evidence was presented as to what efforts were made to serve Blaylock with a subpoena or attempt to locate her, only that such attempts were unsuccessful. Although she appeared to have moved out of state, defense counsel argued, this alone was not sufficient to render her unavailable for service. When prompted by the trial court for a response to this, the State repeated its investigator was unsuccessful in locating her due to her lack of cooperation and failure to answer calls or cards that were left. The court responded, "That's not much of a proffer. What efforts did your investigator do to attempt to serve her? How many times? When? How did he go about it?" The State responded, "I don't have that information." The court persisted, "Make your proffer. When did your investigators attempt to serve her? When was the last time that they attempted to serve her?" The State again responded, "The only information I have is an e-mail that says I was not able to locate her. She was just not being cooperative by not answering calls and cards."

¶ 13 After a recess, during which the trial court instructed both parties to do further research on witness unavailability, the hearing continued. The court discussed *People v. Krisik*, 2018 IL App (1st) 161265, a factually similar case in which a woman harmed by her boyfriend,

the defendant, was unable to be located by the State after he pressured her not to testify at trial. The court likened it to the instant case in that Blaylock had repeatedly stated she did not wish to testify and refused to cooperate with the State by withholding the address she lived at with her mother and not answering calls or cards. It concluded that although the State's proffer was weak and "should have been a lot more detailed" in its investigator's efforts, the evidence nevertheless showed that reasonable attempts to obtain Blaylock's presence at trial were made. The court appeared to use Blaylock's reluctance to be located as a factor in proving the State's efforts were reasonable, stating, "If it weren't for the fact that we have this lady on three different occasions saying I'm not coming, I'd say you fall short of even establishing by a preponderance of the evidence." It further concluded, based on the evidence of defendant's calls and texts from jail, that defendant procured her unavailability. As a result, the court granted the State's motion to admit Blaylock's statements at trial.

¶ 14　　　　The trial was held on June 21, 2023. The State called two witnesses, Officer Haugh and Haley Smith. Haugh testified he was employed with the City of Rockford Police Department and responded to a 911 call made by Blaylock's grandmother on the night of the incident. He testified to wearing a BWC at the time and verified that the DVD footage presented by the State at trial was the footage from that camera. Over defense counsel's objection, Haugh's BWC footage was played for the jury under the forfeiture by wrongdoing doctrine. In the footage, Blaylock tells Haugh that defendant, while knowing she was pregnant, choked her after a disagreement. Finally, Haugh testified that photos of Blaylock's injuries taken at the scene of the incident, which the trial court admitted into evidence, were consistent with those he observed firsthand.

¶ 15    The State's final witness, Smith, testified that she reviewed phone calls and text messages sent by inmates as part of her role with the Winnebago County State's Attorney's Office. She stated each inmate has a unique PIN number, and she could therefore identify which calls and texts were made by which inmate. Three phone calls and one text message sent by defendant to Blaylock while in jail were entered into evidence after Smith identified them. The communications largely focused on what Blaylock planned to do in the case. Again, defense counsel objected to their admission. The State then rested.

¶ 16    After deliberating for just under an hour, the jury found defendant guilty of count II, aggravated battery. Defense counsel filed a motion for a new trial. However, at the hearing on that motion, the parties stated they had instead reached an agreement: the State would recommend a sentence of two years in prison, with six months of supervised release, in exchange for defendant's agreement to withdraw his motion for a new trial. The motion for a new trial was then withdrawn, and defendant was sentenced pursuant to the State's recommendation. Immediately following the sentencing hearing, defense counsel asked for leave to file *instanter* a notice of appeal. The trial judge voiced his uncertainty at the propriety of an appeal following the agreement between the two parties. Nevertheless, defendant appealed.

¶ 17                                II. ANALYSIS

¶ 18    On appeal, defendant argues the trial court erred in granting the State's motion *in limine* admitting Blaylock's out-of-court statements pursuant to the forfeiture by wrongdoing doctrine where the State failed to establish (1) it made reasonable efforts to secure her unavailability and (2) defendant's conduct procured her unavailability. However, before we address defendant's arguments concerning the admittance of Blaylock's statements, we must first determine if (1) Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) applies where there is no

- 6 -

guilty plea, (2) the plain error doctrine applies, or, alternatively, (3) defendant's counsel was ineffective.

¶ 19                                                    A. Rule 604(d)

¶ 20        The State argues defendant forfeited all objections to his trial when he agreed to withdraw his motion for a new trial as part of his sentencing agreement. It maintains that if defendant wishes to appeal any issue, he must first move to withdraw the agreement and place the parties back in their original positions, pursuant to the requirement of Rule 604(d). If he does not, the State argues, he is receiving the benefit of his agreement with the State while refusing to abide by its terms.

¶ 21        To begin, we do not find Rule 604(d) applicable to this case. Rule 604(d) provides guidance on appeals taken from judgments entered upon a plea of guilty. *Id.* It requires, in part, that a defendant wishing to challenge a sentence imposed upon a negotiated plea of guilty must first file a motion to withdraw the plea and vacate the judgment. *Id.* It further provides, "For purposes of this rule, a negotiated plea of guilty is one in which the prosecution has bound itself to recommend a specific sentence, or a specific range of sentence, or where the prosecution has made concessions relating to the sentence to be imposed." *Id.*

¶ 22        Here, although the State reached an agreement with defendant related to sentencing, defendant did not plead guilty, either as part of that agreement or otherwise. He was instead convicted by a jury at trial. This removes him from the purview of Rule 604(d), which applies only to appeals following guilty pleas. See *People v. Nash*, 221 Ill. App. 3d 544, 545 (1991) (holding that requiring a defendant to vacate a sentencing agreement before appealing in a case where defendant did not plead guilty would be a "radical extension of Rule 604(d)"). The trial court acknowledged the distinction at the hearing at which the parties presented the

sentencing agreement, telling defendant, "If you wish to appeal the sentence, you must first file a motion seeking to withdraw your agreement to the sentence," but noting that to appeal the conviction itself, defendant need only file a notice of appeal. Because defendant did not plead guilty, Rule 604(d) is not applicable, and defendant need not have filed a motion to withdraw the sentencing agreement before appealing.

¶ 23                                                    B. Plain Error

¶ 24         Defendant suggests, as does the State, that in withdrawing his posttrial motion, he has forfeited the argument that the trial court erred in admitting Blaylock's out-of-court statements under the forfeiture by wrongdoing doctrine. He nevertheless argues we should review the arguments as plain error or, alternatively, as a result of ineffective assistance of counsel.

¶ 25         Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." This doctrine may apply where, as here, an issue is raised at trial but not in a subsequent posttrial motion, hence defendant's reliance on the doctrine to bring the issues contained in his withdrawn posttrial motion under our review. See *People v. Sorrels*, 389 Ill. App. 3d 547, 552 (2009). Plain error analysis applies to cases involving procedural default, not affirmative acquiescence. *People v. Bowens*, 407 Ill. App. 3d 1094, 1101 (2011). Therefore, before we conduct a plain error analysis, we must first determine whether, as defendant and the State suggest, defendant forfeited the issues in his posttrial motion when he withdrew it, or whether his withdrawal instead constituted a waiver of those issues.

¶ 26         Though often used interchangeably, waiver and forfeiture are two distinct concepts. *People v. Johnson*, 2023 IL App (4th) 210662, ¶¶ 49-50. Forfeiture is the failure to

assert a right; waiver is the "intentional relinquishment and abandonment of a known right." (Internal quotation marks omitted.) *People v. Olano*, 507 U.S. 725, 733 (1993).

¶ 27 Defendant presents a view of the facts consistent with forfeiture, treating the withdrawal of his posttrial motion as an effective "failure" to file a motion. We disagree with this view. Defendant chose to withdraw his posttrial motion as a condition of his sentencing agreement. Stated another way, defendant chose to withdraw *the arguments presented* in his motion as a condition of his sentencing agreement. It is difficult to think of a clearer example of an "intentional relinquishment and abandonment" of certain claims than the action of voluntarily withdrawing the motion raising them. *Id.* This was a decisive act, not a passive failure, as would support a finding of forfeiture. See *Sorrels*, 389 Ill. App. 3d at 552. We therefore find defendant has waived the arguments contained in his withdrawn posttrial motion, not forfeited them. He cannot now attempt to revive them by way of the plain error doctrine.

¶ 28 C. Ineffective Assistance of Counsel

¶ 29 Defendant argues that if we reject his plain error argument, we should alternatively find defense counsel was ineffective for withdrawing his motion for a new trial, as doing so failed to preserve the issues contained in the motion for appeal.

¶ 30 Under the standard established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), counsel is ineffective where (1) counsel's performance is deficient in that it fell below an objective standard of reasonableness and (2) the deficient performance prejudices the defendant such that, but for trial counsel's deficient performance, there was a reasonable probability of a different result. Counsel's performance is not deficient for failing to be perfect; it need only be "reasonably competent." *People v. Brooks*, 2021 IL App (4th) 200573, ¶ 28. Judicial scrutiny of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689. "If either prong of the

*Strickland* test is not met, the defendant's claim fails." *People v. Edmonson*, 408 Ill. App. 3d 880, 885 (2011).

¶ 31        We are unconvinced by defendant's assertion that his counsel was ineffective for withdrawing his motion for a new trial for the simple fact that this action was taken in accordance with defendant's wishes. Defendant chose to enter into a beneficial sentencing agreement with the State, by which he secured a sentence of two years, with six months of mandatory supervised release. As part of that agreement, he withdrew his motion for a new trial. Defendant does not suggest that he was misinformed by counsel as to the effect of withdrawing his motion for a new trial. See *Id.* at 887 (finding ineffective assistance of counsel where the defendant's guilty plea was based on misrepresentations from counsel). In fact, we find the exchange between defense counsel and the court at defendant's sentencing hearing suggests the opposite. There, the following exchange occurred:

> "[DEFENSE COUNSEL]: Judge, I would ask leave to file instanter on behalf of [defendant]—first off, he and I have discussed this. He did agree to the sentence. He does not wish to challenge the sentence. However, he is seeking to appeal the judgment at trial. ***
>
> THE COURT: You withdrew the motion for judgment notwithstanding the verdict and for a new trial.
>
> [DEFENSE COUNSEL]: I'm sorry?
>
> THE COURT: You withdrew that motion.
>
> [DEFENSE COUNSEL]: There is a motion. He is asking to appeal it.
>
> THE COURT: I'm confused. Appeal what? The motion itself is the one that's supposed to identify the issues, the appeal with errs that were committed at

trial that would be justified in terms of appealing the trial. Without that motion, there are no issues that are identified.

[DEFENSE COUNSEL]: Judge, I believe my client believes that the issues presented at trial have been produced in the record."

¶ 32 From this, we conclude that defense counsel discussed the sentencing agreement with defendant, as well as the effect withdrawal of the posttrial motion would have on the preservation of defendant's arguments on appeal, and defendant knowingly agreed to proceed with the agreement in spite of the sacrifice it required. Nothing in the record suggests otherwise, including defendant's argument on appeal.

¶ 33 It is therefore difficult to pinpoint exactly what act or nonact of counsel defendant alleges was deficient representation. Defendant maintains that "[counsel's] actions forfeited meritorious issues," but counsel did not force defendant to accept the sentencing agreement (defendant confirmed at his sentencing hearing that he was accepting the agreement freely and voluntarily). Further to the point, defendant makes no claim now that he wishes to undo the agreement. In essence, we find his ineffective assistance of counsel argument boils down to displeasure that his attorney could not provide him with the best of both worlds—a favorable sentencing agreement and preservation of the issues he raised in his posttrial motion. We do not find this constitutes deficient representation. Defense counsel cannot be blamed for defendant's dissatisfaction with the results of his own informed decisions.

¶ 34 As defendant has failed to establish the first prong of ineffective assistance of counsel, deficient performance, we need not address the second, prejudice. Additionally, because defendant has failed to establish ineffective assistance of counsel and cannot raise his arguments under the plain error doctrine, we will not address them on their merits.

¶ 35                                    III. CONCLUSION

¶ 36            For the reasons stated, we affirm the trial court's judgment.

¶ 37            Affirmed.